# Illinois Official Reports

## Appellate Court

---

### *People v. Csaszar*, 2013 IL App (1st) 100467

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARTIN CSASZAR, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-0467 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Rehearing denied<br>Opinion filed | October 9, 2013<br><br>November 6, 2013<br>November 27, 2013<br>December 4, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's dismissal of the postconviction petition defendant filed with the assistance of his retained counsel was affirmed over his contention that his retained counsel failed to provide reasonable assistance in the postconviction proceedings, since no rule, statute, or constitutional provision requires the State to assure that defendant's retained counsel's assistance is reasonable. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00-CR-1274; the Hon. Catherine K. Haberkorn, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Anne E. Carlson, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Mason concurred in the judgment and opinion.

**OPINION**

¶ 1    After a bench trial, the trial court found Martin Csaszar guilty of solicitation of murder for hire (720 ILCS 5/8-1.2 (West 1998)) and sentenced him to 30 years in prison. With the assistance of retained counsel, Csaszar filed a postconviction petition in 2008. The trial court granted the State's motion to dismiss the petition without an evidentiary hearing. On appeal, Csaszar argues only that his retained counsel did not provide reasonable assistance with postconviction proceedings. Because we find that no constitutional provision, no statute, and no rule requires the State to assure the reasonable assistance of retained counsel in postconviction proceedings, we hold that Csaszar has not stated a cognizable claim for relief from the trial court's judgment. Accordingly, we affirm.

¶ 2                                    BACKGROUND
¶ 3    In 1997, Monica Crisan hired Csaszar to drive a truck for Livdimon Enterprise Corporation. Csaszar's employment ended in April 1998. Crisan invited Csaszar to come to her home to pick up his final paycheck on May 3, 1998. Crisan deducted from Csaszar's wages an amount for damage to Livdimon's truck. The amount of the paycheck upset Csaszar. After Csaszar left Crisan's home, Crisan called police to report that Csaszar pulled out a gun and threatened her. Police arrested Csaszar and charged him with aggravated assault and unlawful use of a weapon. The trial court continued proceedings on the charges through 1998 and 1999.
¶ 4    Csaszar found work driving a truck for Jakacki Bag and Barrel Company. There he met James Anderson, who worked as a security officer for Jakacki. In 1999, Csaszar told Anderson about the criminal charges Crisan initiated against him. On December 16, 1999, the day before a hearing on the charges, Csaszar met with Anderson and Mark Shaffer. In a tape-recorded

conversation, Csaszar gave Shaffer $500 in exchange for Shaffer's promise to kill Crisan. Shaffer, an undercover agent working for the Bureau of Alcohol, Tobacco and Firearms (ATF), gave a prearranged signal to Chicago police officers once Csaszar gave him the cash. The officers arrested Csaszar and prosecutors charged him with soliciting Shaffer and Anderson to murder Crisan. Csaszar spoke with an officer and an assistant State's Attorney at the police station, but he did not sign any statement.

¶ 5    Before trial, defense counsel requested a behavioral clinical examination to evaluate Csaszar's fitness to stand trial. The trial court granted the request. The psychiatrist who interviewed Csaszar found him fit to stand trial and legally sane at the time of the offense.

¶ 6    At the bench trial, Crisan testified that on May 3, 1998, after she gave Csaszar the paycheck he considered inadequate, he pulled out a gun and pointed it at her. As she looked for a phone, Csaszar said, "You want to call 9-1-1. *** By the time they will arrive, you'll be dead." Some neighbors passed by her home, and Csaszar ran off.

¶ 7    Anderson testified that Csaszar asked him to kill Crisan. When Anderson refused, Csaszar asked him to find someone else to kill Crisan. Anderson contacted an agent he knew who worked for ATF. That agent arranged for Shaffer to pose as a hitman and for recording of further contacts between Anderson, Shaffer and Csaszar.

¶ 8    Assistant State's Attorney Fabio Valentini testified that Csaszar admitted he wanted Crisan dead because she brought charges against him. He had the idea of hiring a hitman, and he asked Anderson to help him.

¶ 9    Csaszar testified that Anderson sought out Csaszar's company and offered to help him with several problems. When Csaszar told Anderson about the criminal charges, Anderson suggested killing Crisan. Anderson arranged for the hitman. Csaszar could not explain why he met with Anderson and Shaffer, and why he said what he said in the recorded conversation.

¶ 10    The trial court found Csaszar guilty of soliciting Shaffer to murder Crisan for hire and sentenced him to 30 years in prison. The appellate court affirmed the trial court's judgment. *People v. Csaszar*, 375 Ill. App. 3d 929 (2007).

¶ 11    In 2006, Csaszar drafted a postconviction petition, but he never filed it. Instead, in 2007, he hired an attorney to prepare a postconviction petition for him. He sent the attorney his draft. In the draft, he claimed that the State tampered with the videotape of his conversation with Shaffer and Anderson. Csaszar said, in an affidavit, that he tried to back away from the deal, but Shaffer said that if Csaszar made him come all the way to the meeting for nothing, Shaffer would kill Csaszar and Csaszar's family. Csaszar said that an inexplicable light appeared on the videotape, showing where the State cut several seconds from the conversation, despite the lack of any gap in the time signature shown on the tape.

¶ 12    On May 28, 2008, Csaszar's retained counsel filed a postconviction petition in which he contended that at the time of the offense, Csaszar's medications and depression left him unable to understand his own actions; Csaszar was not fit to stand trial; and his trial counsel provided ineffective assistance. Counsel for the postconviction proceedings specified four ways in which trial counsel provided ineffective assistance: (1) counsel did not obtain an assessment of Csaszar's fitness to stand trial; (2) counsel did not obtain an assessment of Csaszar's mental

health at the time of the offense; (3) counsel did not find out whether Csaszar understood his right to a jury trial; and (4) counsel failed to present evidence to show entrapment. Counsel supported the petition with affidavits from Csaszar's mother, sister, and ex-wife concerning Csaszar's mental health, a letter from a psychiatrist about the effects of Csaszar's medications, and an affidavit from Csaszar. Counsel sent Csaszar a letter in which he explained that he omitted the allegation about tampering with the videotape because he and Csaszar's sister watched the videotape and saw no indication of tampering.

¶ 13    The trial court permitted the State to file a motion to dismiss the petition. The trial court granted the motion to dismiss. Csaszar now appeals.

¶ 14                                    ANALYSIS

¶ 15    Csaszar does not contest the trial court's decision to dismiss his postconviction petition. Instead, on this appeal, he argues only that his privately retained counsel did not provide the reasonable level of assistance required for postconviction proceedings. In particular, Csaszar claims that competent counsel should have further investigated the claim Csaszar made in his draft postconviction petition that the State tampered with the videotape of his conversation with Shaffer. The State responds that Csaszar had no constitutional right to the assistance of counsel in postconviction proceedings and no statute or rule required a reasonable level of assistance from privately retained counsel.

¶ 16    Csaszar admits that he has no constitutional right to assistance of counsel in postconviction proceedings. See *People v. Guest*, 166 Ill. 2d 381, 412 (1995). He relies on cases in which courts have held that counsel appointed to assist a defendant with postconviction proceedings must provide a reasonable level of assistance. See *People v. Turner*, 187 Ill. 2d 406, 410 (1999); *People v. Davis*, 156 Ill. 2d 149, 162 (1993); *People v. Johnson*, 154 Ill. 2d 227, 237-38 (1993); *People v. Owens*, 139 Ill. 2d 351, 359 (1990). In those cases, our supreme court interpreted the responsibilities under Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)) of counsel appointed to assist defendants with postconviction petitions. *Turner*, 187 Ill. 2d at 410; *Davis*, 156 Ill. 2d at 162; *Johnson*, 154 Ill. 2d at 238; *Owens*, 139 Ill. 2d at 359. But Rule 651(c) applies only when the petitioner files his original postconviction petition *pro se*, and not when the petitioner obtains the assistance of retained counsel. *People v. Richmond*, 188 Ill. 2d 376, 382-83 (1999); *People v. Kegel*, 392 Ill. App. 3d 538, 540-41 (2009); *People v. Johnson*, 314 Ill. App. 3d 444, 454 (2000).

¶ 17    Csaszar recognizes the authorities limiting the reach of Rule 651(c). However, he argues that the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)) requires a reasonable level of assistance from retained counsel. He cites in support cases in which the court held that the Act itself, before the adoption of Rule 651, required reasonable assistance of counsel. See *People v. Wales*, 46 Ill. 2d 79 (1970); *People v. Ford*, 40 Ill. 2d 440 (1968); *People v. Barnes*, 40 Ill. 2d 383 (1968); *People v. Wilson*, 40 Ill. 2d 378 (1968); *People v. Tyner*, 40 Ill. 2d 1 (1968); *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968). These cases "concer[n] the quality of representation required of counsel appointed to represent an indigent prisoner in proceedings under the Post-Conviction Hearing Act." *Slaughter*, 39 Ill. 2d at 279. This limit on the cases comports with the Act, which establishes the State's duty to provide

counsel only "[i]f the petitioner is without counsel and alleges that he is without means to procure counsel." 725 ILCS 5/122-4 (West 2006). The Act does not mention the duties of counsel retained by a petitioner who has the means to procure counsel.

¶ 18    Here, as in *Kegel*, "defendant seeks to disengage the guarantee of reasonable assistance from the underlying right to counsel such that the former can exist independently of the latter." *Kegel*, 392 Ill. App. 3d at 541. Like the *Kegel* court, we find no authority in either the Act or case law to support the claim that the State must assure that a defendant obtains from retained counsel reasonable assistance in postconviction proceedings. We find that the State has no duty to provide counsel, and no duty to provide reasonable assistance of counsel, for any petitioner able to hire his own counsel. See 725 ILCS 5/122-1 *et seq.* (West 2006).

¶ 19    In a footnote to his brief, Csaszar argues that the General Assembly's decision to afford indigent petitioners reasonable assistance of counsel, but not to assure reasonable assistance to postconviction petitioners who hire their own attorneys, violates his right to equal protection of the laws. "In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) "Support of the poor has long been recognized as a public purpose [citation]." *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 515 (1937). States do not violate the equal protection clause when they provide benefits to indigents that they do not provide to persons with sufficient means to purchase the benefits. *Carmichael*, 301 U.S. at 515. The classification of prisoners as indigent or non-indigent, and the provision of counsel only to the indigent, bears a fair relationship to a legitimate public purpose of providing assistance of counsel for postconviction petitioners unable to retain private counsel. See *Plyler*, 457 U.S. at 216. The State's decision to provide competent counsel only for indigent defendants, while leaving postconviction petitioners who can afford counsel responsible for finding competent counsel, does not violate the right of the nonindigent to equal protection of the laws.

¶ 20    Csaszar cites *People v. Hayes*, 49 Ill. 2d 298 (1971), *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and *McCoy v. Court of Appealsof Wisconsin, District 1*, 486 U.S. 429 (1988), as authority requiring the State to ensure the competent assistance of privately retained counsel for postconviction proceedings. In *Hayes*, the postconviction petitioner alleged that the counsel he retained to assist with postconviction proceedings failed to provide reasonable assistance. The *Hayes* court rejected the claim without addressing the issue of whether the State bears any responsibility for assuring that a postconviction petitioner obtains reasonable assistance from counsel the petitioner hired. *Hayes*, 49 Ill. 2d at 302-04. The *Cuyler* Court held only that the constitutional right to effective assistance of counsel at trial applied to both appointed and retained counsel. *Cuyler*, 446 U.S. at 344-45. The constitution does not require assistance of counsel for postconviction proceedings. See *Guest*, 166 Ill. 2d at 412.

¶ 21    Finally, Csaszar quotes the *McCoy* Court, which said:

"Every advocate has essentially the same professional responsibility whether he or she accepted a retainer from a paying client or an appointment from a court. The appellate lawyer must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal. In preparing

- 5 -

and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve the client's interest to the best of his or her ability." *McCoy*, 486 U.S. at 438.

Nothing in *McCoy* suggests that the State bears responsibility for assuring that the client receives reasonable assistance from his privately retained attorney.

¶ 22 In accord with *Kegel* and *McCoy*, we find that the attorney has a duty to provide the petitioner with a reasonable level of assistance with postconviction proceedings. *Kegel*, 392 Ill. App. 3d at 541. The *Kegel* court held:

"An attorney who fails to provide competent representation is potentially subject to disciplinary action as well as to liability for professional malpractice.

*** We note, however, that our holding does not *necessarily* foreclose defendant from raising *** in a subsequent petition under the Act [the issue he sought to raise as proof that his retained counsel failed to provide reasonable assistance]. To do so, however, defendant will have to obtain leave from the trial court by establishing both cause for his failure to raise the issue in his first petition and prejudice resulting from that failure. 725 ILCS 5/122-1(f) (West 2006). We express no view on whether the quality of postconviction counsel's performance could establish cause or whether it resulted in any prejudice." (Emphasis in original.) *Kegel*, 392 Ill. App. 3d at 541-42.

¶ 23 We find the reasoning of *Kegel* fully applicable here. Csaszar may seek recourse against his attorney for the attorney's alleged failings and he may bring a successive postconviction petition, in which he argues that his retained counsel's failings show cause for his failure to raise meritorious issues in his initial postconviction petition. Like the *Kegel* court, we express no opinion as to whether postconviction counsel's alleged failings can establish cause for the failure of the initial postconviction petition to raise the issues Csaszar seeks to raise.

¶ 24                                                    CONCLUSION

¶ 25 Because the Act does not require reasonable assistance of retained counsel, we find that Csaszar has not stated a cognizable claim for relief on this appeal. Csaszar does not challenge the trial court's decision to dismiss the postconviction petition he filed with the assistance of retained counsel. Accordingly, we affirm the trial court's judgment.

¶ 26 Affirmed.