# Illinois Official Reports

## Appellate Court

*People v. Anguiano*, 2013 IL App (1st) 113458

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEJANDRO ANGUIANO, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-3458 |
| Filed<br>Rehearing denied | December 26, 2013<br>February 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The second-stage dismissal of defendant's postconviction petition was affirmed, notwithstanding defendant's contentions that his private counsel, who had also represented defendant on his direct appeal, failed to provide a reasonable level of assistance and did not comply with Supreme Court Rule 651(c), since Rule 651(c) does not apply when defendant has retained counsel, and private counsel's performance did not fall below the level of reasonable assistance. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-3254(03); the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Brett C. Zeeb, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Joan F. Frazier, and Margaret G. Lustig, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1   Following a bench trial, defendant Alejandro Anguiano was found guilty of delivering more than 900 grams of cocaine and was sentenced to 15 years' imprisonment. We affirmed his conviction on direct appeal. *People v. Anguiano*, No. 1-10-0129 (2011) (unpublished order under Supreme Court Rule 23). He filed a counseled postconviction petition, which the circuit court dismissed at the second stage. Defendant argues on appeal that the private attorney who represented him both on direct appeal and in his postconviction proceedings failed to provide a reasonable level of assistance or comply with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013), where he failed to consult with defendant and raised precisely the same issue in both proceedings. We affirm.

¶ 2                          I. BACKGROUND

¶ 3   Defendant and his codefendants–Alberto Hernandez, Jose Raul Calvillo, and Jose Moncada-Rodriguez–were charged with delivery of more than 900 grams of cocaine in violation of section 401(a)(2)(D) of the Illinois Controlled Substances Act. 720 ILCS 570/401(a)(2)(D) (West 2008). Defendant and Hernandez were tried in a joint bench trial.

¶ 4                          A. Bench Trial

¶ 5   Undercover officer Gil Gutierrez testified that, on January 20, 2009, he and defendant discussed via telephone the sale of two kilograms of cocaine. At approximately 6:30 p.m., they met inside Gutierrez's truck at a Sam's Club parking lot in Countryside, Illinois. Gutierrez wore a covert listening device. During their conversation, Gutierrez displayed a "flash roll" of money, and defendant agreed to sell two kilograms of cocaine for $25,000 per kilogram.

¶ 6   Defendant and Gutierrez spoke again via telephone at approximately 7 p.m. Minutes later, they met in Gutierrez's truck in a Burger King parking lot near Pulaski Avenue and I-55. After defendant made a telephone call, the two men drove to Pete's Fresh Market at 43rd Street and Pulaski Avenue. After defendant made several more calls, Calvillo arrived in a blue Ford

Explorer and traded places with Anguiano. Hernandez soon arrived in a red Mitsubishi Eclipse and gave an orange bucket to Calvillo, who handed it to Gutierrez. Upon seeing two taped, brick-shaped objects in the orange bucket, Gutierrez exited his truck and gave an arrest signal. Additional officers arrived and arrested defendant and his codefendants. Defendant later gave an oral statement acknowledging he had arranged the sale of two kilograms of cocaine.

¶ 7  Surveillance officer and field supervisor Frank Spizziri also testified. His account was nearly identical to Gutierrez's. The parties stipulated to the weight, chemical composition, and chain of custody of the 2,018 grams of cocaine recovered. Neither defendant nor Hernandez presented evidence. The court found defendant and Hernandez guilty of delivery of a controlled substance and sentenced defendant to the minimum 15-year term of imprisonment.

¶ 8                                   B. Direct Appeal

¶ 9  Defendant argued on appeal that his trial attorney was ineffective, where he failed to pursue a viable entrapment defense and failed to subject the prosecution's case to meaningful adversarial testing pursuant to *United States v. Cronic*, 466 U.S. 648 (1984). We held that defendant failed to "explain on appeal how the record indicates he was entrapped to commit the offense merely by the fact someone's cousin induced him to find buyers for cocaine." *People v. Anguiano*, No. 1-10-0129, slip op. at 11 (2011) (unpublished order under Supreme Court Rule 23). We further held that counsel was not ineffective under *Cronic*. *Id.* We therefore affirmed the trial court's judgment. *Id.*

¶ 10                            C. Postconviction Petition

¶ 11  The private attorney who represented defendant on direct appeal also drafted and filed his postconviction petition. Defendant again argued that his trial attorney was ineffective in failing to mount a viable entrapment defense. He elaborated on the claim he set forth on direct appeal, arguing that an informant whom he knew as "Jose" encouraged him to quit his job and earn money by locating a drug supplier for Jose's cousin, Pablo. Jose gained defendant's trust by using cocaine with him, and defendant agreed to supply the drugs. To his pleading, defendant attached an affidavit Gutierrez submitted in seeking an eavesdropping order. In pertinent part, Gutierrez attested that a confidential source had told him that defendant was willing to sell six kilograms of cocaine for $21,000 per kilogram and had arranged a meeting between Gutierrez and defendant.

¶ 12  The State moved to dismiss, arguing defendant's claim was barred by *res judicata*. At the hearing on the State's motion, postconviction counsel once again argued that trial counsel was ineffective, but emphasized that he was presenting Gutierrez's affidavit as new evidence of a viable entrapment defense. The circuit court agreed with the State and granted its motion to dismiss. Defendant timely appealed.

¶ 13                                  II. ANALYSIS

¶ 14  The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)) has three stages. At the first stage, the circuit court must independently review a petition within 90 days and

dismiss petitions that are frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). If the petition is not summarily dismissed, it is advanced to the second stage, where counsel is appointed and the State may respond. 725 ILCS 5/122-4, 122-5 (West 2012); *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). If the defendant makes a substantial showing of a constitutional violation at the second stage, the petition is advanced to the third stage for an evidentiary hearing. 725 ILCS 5/122-6 (West 2012); *People v. Gaultney*, 174 Ill. 2d 410, 418-19 (1996).

¶ 15 The sixth amendment right to counsel does not extend to collateral appeals. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); see also *Johnson v. Avery*, 393 U.S. 483, 487-88 (1969) (federal and state courts have no general obligation to appoint counsel to prisoners seeking postconviction relief). Our legislature therefore created the Act with *pro se* defendants in mind. Albert E. Jenner, Jr., *The Illinois Post-Conviction Hearing Act*, 9 F.R.D. 347 (1949); see also *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968) ("it was anticipated that most of the petitions under the Act would be filed *pro se* by prisoners who had not had the aid of counsel in their preparation"). Even today, most postconviction petitions are drafted and filed *pro se*, and a defendant is only appointed counsel if his petition is advanced to the second stage. *Hodges*, 234 Ill. 2d at 9 (most petitions are filed *pro se*); 725 ILCS 5/122-4 (West 2012) (counsel may be appointed at the second stage).

¶ 16 Defendants are not barred from hiring postconviction counsel, however, and since at least 1969, Illinois courts have reviewed counseled initial postconviction petitions. See, *e.g.*, *People v. Mayfield*, 42 Ill. 2d 318, 319 (1969); *People v. Gonzales*, 43 Ill. 2d 110, 111 (1969); *People v. Weaver*, 45 Ill. 2d 136, 137 (1970). Counseled petitions still constitute a substantial minority of the pleadings filed under the Act. See, *e.g.*, *People v. Tate*, 2012 IL 112214, ¶ 11; *People v. Harris*, 2013 IL App (1st) 111351, ¶ 2.

¶ 17 Reviewing counseled petitions under a *pro se* centered statute has led to some difficulties. See, *e.g.*, *Tate*, 2012 IL 112214, ¶¶ 11-12 (addressing whether counseled petitions must meet a higher bar than *pro se* petitions). We address one such difficulty today: whether defendants counseled at the first and second stages enjoy some guarantee of counsel's performance at the second stage. Defendant argues that his privately retained attorney failed to provide a reasonable level of assistance or comply with Rule 651(c), where he failed to consult with defendant and raised precisely the same issue on direct appeal and in his postconviction proceedings. The State responds that counseled defendants do not benefit from any guarantee of counsel's performance and, regardless, counsel's performance in this case was not deficient. While we agree that defendant was entitled to a reasonable level of assistance, we hold that counsel's performance was not deficient.

¶ 18 A. The Law Regarding Postconviction Counsel's Performance

¶ 19 Over the years, Illinois courts have applied three standards to postconviction counsel's performance: (1) adequate presentation of a defendant's claims (1960s onward); (2) Rule 651(c) (1970 onward); and (3) a reasonable level of assistance (1990 onward). While these

standards greatly overlap, they are not coterminous. We briefly examine each standard before determining which may apply here.

¶ 20    In 1966, the Illinois Supreme Court held that a defendant's postconviction claims must be "adequately present[ed]." *People v. Ashley*, 34 Ill. 2d 402, 412 (1966). The court held two years later that this required "the attorney appointed to represent an indigent defendant" to (1) "consult with him either by mail or in person"; (2) "ascertain his alleged grievances"; (3) "examine the record of the proceedings at the trial"; and (4) "amend the petition that had been filed *pro se*, so that it would adequately present the prisoner's constitutional contentions." *Slaughter*, 39 Ill. 2d at 285; see also *People v. Craig*, 40 Ill. 2d 466 (1968) (applying *Slaughter* and holding *pro se* defendant who was later appointed counsel did not receive adequate representation); *People v. Garrison*, 43 Ill. 2d 121, 123 (1969) (applying *Slaughter* and holding that, "unless proper representation is afforded, the appointment of an attorney is but an empty formality").

¶ 21    Rule 651(c), effective January 1, 1970, codified the *Slaughter* mandate:

> "The record filed in that court shall contain a showing, which may be made by the certificate of defendant's attorney, that the attorney has consulted with defendant by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of defendant's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013).

Rule 651(c) does not provide a general guarantee of counsel's performance but rather lists three specific duties: (1) consulting with the defendant to ascertain his or her contentions of deprivation of constitutional rights; (2) examining the record of the proceedings at trial; and (3) making any amendments to the petition filed *pro se* that are necessary for an adequate presentation of defendant's contentions. See *People v. Turner*, 187 Ill. 2d 406, 410 (1999) ("Supreme Court Rule 651(c) outlines the specific duties of appointed counsel in post-conviction proceedings."); *People v. Greer*, 212 Ill. 2d 192, 204-05 (2004) ("This court has repeatedly held that counsel must perform specific duties in his or her postconviction representation in the circuit court, as set forth in Supreme Court Rule 651(c).").

¶ 22    Neither the Act nor Rule 651(c) expressly guarantees a "reasonable level of assistance." See 725 ILCS 5/122-4 (West 2012); Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The earliest reference to this standard appears in *People v. Owens*, 139 Ill. 2d 351, 359 (1990). There, our supreme court stated that "[s]ection 122-4 of the Code of Criminal Procedure *** and Supreme Court Rule 651 together ensure that post-conviction defendants in this State receive a reasonable level of assistance by counsel in post-conviction proceedings." *Id.* The *Owens* court explained its reasoning:

> "Because the right to counsel in post-conviction proceedings is derived from a statute rather than the Constitution, post-conviction defendants are guaranteed only the level of assistance which that statute provides. Section 122-4 of the Code of Criminal Procedure and Supreme Court Rule 651 provide post-conviction defendants with a *reasonable* level of assistance in post-conviction proceedings, but do not guarantee that

they will receive the same level of assistance that the Constitution guarantees to defendants at trial." (Emphasis in original.) *Id.* at 364.

The Illinois Supreme Court reaffirmed the reasonable-level-of-assistance standard over the next two decades. See *People v. Wright*, 149 Ill. 2d 36, 64 (1992) (postconviction defendants are entitled to a reasonable level of assistance); *People v. Flores*, 153 Ill. 2d 264, 276 (1992) (same); *People v. Guest*, 166 Ill. 2d 381, 412 (1995) (same); *People v. Williams*, 186 Ill. 2d 55, 60 (1999) (same); *Turner*, 187 Ill. 2d at 410 (same); *People v. Mitchell*, 189 Ill. 2d 312, 358 (2000) (same); *People v. Moore*, 189 Ill. 2d 521, 541 (2000) (same); *People v. Johnson*, 191 Ill. 2d 257, 270 (2000); *People v. Johnson*, 192 Ill. 2d 202, 207 (2000) (same); *People v. McNeal*, 194 Ill. 2d 135, 142 (2000) (same); *People v. Simpson*, 204 Ill. 2d 536, 550 (2001) (same); *People v. Munson*, 206 Ill. 2d 104, 137 (2002) (same); *People v. De La Paz*, 204 Ill. 2d 426, 440 (2003) (same); *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003) (same); *Greer*, 212 Ill. 2d at 204 (same); *People v. Lander*, 215 Ill. 2d 577, 583 (2005) (same); *People v. Lyles*, 217 Ill. 2d 210, 216 (2005) (same); *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006); *People v. Perkins*, 229 Ill. 2d 34, 42 (2007) (same); see also *People v. Thomas*, 2013 IL App (2d) 120646, ¶ 6 ("Although the Act does not, by its terms, specify the quality of legal representation that postconviction counsel must provide, 'our supreme court has placed its gloss upon the statute, holding that defendants are entitled to a reasonable level of assistance ***.' " (quoting *People v. Kegel*, 392 Ill. App. 3d 538, 541 (2009))).

¶ 23    Today, we must determine which of these standards–if any–apply where, as here, defendant was represented by private counsel at the first and second stages. Because the adequate-presentation standard was codified in Rule 651(c), we turn first to that rule.

¶ 24    Nearly two decades ago, our appellate court twice held that Rule 651(c) does not apply where privately retained counsel filed the initial petition. See *People v. Doggett*, 255 Ill. App. 3d 180, 187 (1994); *People v. Zambrano*, 266 Ill. App. 3d 856, 867 (1994), *vacated in part*, 159 Ill. 2d 579 (1995) (supervisory order). Several years later, in *People v. Richmond*, 188 Ill. 2d 376 (1999), our supreme court held that Rule 651(c) applies when a defendant proceeds *pro se* at the first stage and is represented by counsel at the second stage. *Id.* at 381. However, it confirmed the *Doggett* and *Zambrano* courts' holdings that Rule 651(c) does not apply when the initial petition was filed by private counsel. *Id.* at 382-83; see also *People v. Johnson*, 314 Ill. App. 3d 444, 454 (2000) (following *Doggett*, *Zambrano*, and *Richmond*); *People v. Bennett*, 394 Ill. App. 3d 350, 354 (2009) (same).

¶ 25    The following year, our supreme court held in *People v. Mitchell* that the third prong of Rule 651(c) does not apply where the initial petition was filed by private counsel:

"The clause defendant refers to is the one requiring counsel to affirm that he 'has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of defendant's contentions.' 134 Ill. 2d R. 651(c). As defendant did not file a *pro se* petition, his attorneys could not have violated that provision." *Mitchell*, 189 Ill. 2d at 358.

We likewise hold that Rule 651(c) does not apply where the initial petition was filed by retained counsel. Accordingly, defendant in this case cannot not benefit from Rule 651(c)'s protections.

- 6 -

¶ 26    We turn next to the reasonable-level-of-assistance standard. Although our supreme court has yet to expressly address this question, case law and common sense strongly suggest that all defendants represented by counsel have the right to a reasonable level of assistance at the second stage.

¶ 27    The Illinois Supreme Court has indicated that all defendants at the second stage may benefit from the right to a reasonable level of assistance. The *Mitchell* court held that Rule 651(c) did not apply in that case, because an attorney drafted and filed the initial petition, but the court separately applied a reasonable-level-of-assistance analysis:

> "Here, defendant's attorneys clearly provided a reasonable level of assistance. They filed a lengthy post-conviction petition raising 17 new claims of deprivations of constitutional rights. The petition was supported by 47 exhibits. We do not believe that their representation was unreasonable merely because the only additional evidence they came up with in 2½ years was a mitigation report." *Mitchell*, 189 Ill. 2d at 358.

Although the court concluded that counsel's performance was not deficient, the language above–and the fact that the court engaged in a separate reasonable-level-of-assistance analysis–strongly indicates that a counseled defendant is entitled to a reasonable level of assistance at the second stage. See also *Flores*, 153 Ill. 2d at 276 (discussing reasonable-level-of-assistance standard independently of Rule 651(c)).

¶ 28    Our appellate court has also suggested that defendants may raise a freestanding reasonable-level-of-assistance claim. In *People v. Kegel*, the appellate court did not cite Rule 651(c) but rather applied the reasonable-level-of-assistance standard alone. *Kegel*, 392 Ill. App. 3d at 539. The defendant in *Kegel* filed a counseled initial petition that was summarily dismissed. *Id.* He argued that his attorney failed to provide a reasonable level of assistance. *Id.* at 541. The *Kegel* court ultimately rejected this claim, holding that the statutory right to counsel does not attach at the first stage of postconviction proceedings, because it would result in disparate treatment of defendants depending on whether they could afford counsel. *Id.* Because the instant case presents a question of counsel's performance at the second stage, we need not address the first-stage question discussed in *Kegel*. Rather, for our purposes, it is sufficient to note that the *Kegel* court conducted a freestanding reasonable-level-of-assistance analysis. See also *Bennett*, 394 Ill. App. 3d at 354-55 (holding that Rule 651(c) does not apply where counsel filed the initial petition, but leaving for another day the question of a freestanding right to a reasonable-level-of-assistance, where defendant did not raise that issue on appeal).

¶ 29    The nature of the reasonable-level-of-assistance standard further indicates that it is not subject to the same restrictions as Rule 651(c). It is well established that the Act requires a reasonable level of assistance. See *Turner*, 187 Ill. 2d at 410 ("It is well settled that the Act requires counsel to provide a 'reasonable level of assistance' to petitioner in post-conviction proceedings."); *Moore*, 189 Ill. 2d at 541 ("This court has interpreted the Act as requiring *** a reasonable level of assistance by appointed counsel at post-conviction proceedings."); *People v. Suarez*, 224 Ill. 2d 37, 42 (2007) ("The Act provides for a reasonable level of assistance."); *Lander*, 215 Ill. 2d at 583 ("The Act requires postconviction counsel to provide a 'reasonable level of assistance' to a defendant." (quoting *Owens*, 139 Ill. 2d at 364)). Unlike

- 7 -

Rule 651(c), the Act applies to all postconviction petitions. See *Tate*, 2012 IL 112214, ¶¶ 11-12 (applying the same postconviction standards without regard to whether defendant retained counsel). Neither the Act nor the Illinois Supreme Court decisions interpreting the Act as requiring a reasonable level of assistance have limited that guarantee to formerly *pro se* defendants. We decline to create such a limitation here.

¶ 30 There is no convincing policy or commonsense reason that we have discerned–or to which the State has pointed–that suggests that defendants counseled at the first and second stages are not entitled to a reasonable level of assistance at the second stage. In *People v. Perkins*, 229 Ill. 2d 34, 44 (2007), for instance, our supreme court applied both the reasonable-level-of-assistance standard and Rule 651(c) to hold that "[a]n adequate or proper presentation of a petitioner's substantive claims necessarily includes attempting to overcome procedural bars, including timeliness, that will result in dismissal of a petition if not rebutted." It is difficult to imagine why counsel appointed or retained at the second stage would be required to attempt to overcome a procedural bar, while counsel retained through the first and second stages would not.

¶ 31 The only conceivable reason for denying the right to a reasonable level of assistance to a defendant who retained an attorney through the first and second stages is that the attorney's mere presence ensures that a defendant will be adequately represented. See, *e.g.*, *Doggett*, 255 Ill. App. 3d at 187 (holding in the Rule 651(c) context that defendant had an opportunity to adequately present his claims, where his petition was drafted by private counsel). From the many postconviction decisions regarding counsel's deficient performance, however, we know this is not the case. While retaining counsel at the first stage may give a defendant an advantage over *pro se* defendants in surviving first-stage proceedings, it by no means guarantees a reasonable level of assistance at the second stage. All defendants should enjoy the right to a reasonable level of assistance at the second stage of postconviction proceedings, as there is no compelling reason for disparate treatment.

¶ 32 In reaching this conclusion, we recognize that, on its face, section 122-4 of the Act does not state any guarantees of counsel's performance, much less guarantee a reasonable level of assistance to defendants counseled at the first and second stages. See 725 ILCS 5/122-4 (West 2012). Indeed, in pertinent part, that section merely provides counsel to *pro se* defendants. See 725 ILCS 5/122-4 (West 2012) ("If appointment of counsel is so requested, and the petition is not dismissed pursuant to Section 122-2.1, the court shall appoint counsel if satisfied that the defendant has no means to procure counsel."). However, to resolve this question on that basis alone would be to ignore extensive Illinois Supreme Court precedent. As established above, our supreme court has, on at least 20 occasions, held that the Act provides for a reasonable level of assistance. See *supra* ¶¶ 22, 27. While we recognize that our supreme court has not expressly addressed this issue, its decision in *People v. Mitchell* indicates that this guarantee extends to all defendants at the second stage, regardless of whether they proceeded *pro se* or with counsel at the first stage. *Mitchell*, 189 Ill. 2d at 358; *Kegel*, 392 Ill. App. 3d at 539.

¶ 33 Our decision in *People v. Mendoza*, 402 Ill. App. 3d 808, 816 (2010), does not require a different result. That case concerned a *pro se* defendant who was appointed counsel at the second stage. *Id.* at 810. Because defendant filed his initial petition *pro se*, Rule 651(c) applied.

*Id.* at 813-14. The *Mendoza* court held that defendant's attorney had met the rule's requirements. *Id.* at 814. The defendant, however, set forth a nebulous claim that his attorney had also failed to provide a reasonable level of assistance. *Id.* at 816. The *Mendoza* court held only that the defendant had failed to state a cognizable freestanding claim that he was denied a reasonable level of assistance. *Id.* at 816-17.

¶ 34　　　We are cognizant of the decision in *People v. Csaszar*, 2013 IL App (1st) 100467, which drew a distinction between appointed and retained counsel with regard to the right to a reasonable level of assistance. That decision was rooted in the lack of a constitutional guarantee to counsel's performance. *Id.* ¶¶ 16, 19-20. We respectfully disagree with our colleagues' view, as the right to a reasonable level of assistance arises not from any constitutional right, but from our supreme court's holding that the Act requires a reasonable level of assistance. See *Turner*, 187 Ill. 2d at 410; *Moore*, 189 Ill. 2d at 541; *Suarez*, 224 Ill. 2d at 42; *Lander*, 215 Ill. 2d at 583. Neither the Act nor the Illinois Supreme Court's rulings create a distinction between appointed and retained counsel with regard to this right, and we decline to infer such a distinction.

¶ 35　　　In *Csaszar*, as here, the defendant filed a counseled postconviction petition, which was dismissed at the second stage. *Csaszar*, 2013 IL App (1st) 100467, ¶¶ 12-13. On appeal, the defendant contended that postconviction counsel failed to provide a reasonable level of assistance, where he failed to properly investigate defendant's claim that the State tampered with a videotape admitted at trial. *Id.* ¶ 15. The *Csaszar* court held, as we do, that Rule 651(c) only applies to petitions filed *pro se*. *Id.* ¶ 16. However, the court further held that the defendant was not entitled to a reasonable level of assistance at the second stage. *Id.* ¶ 18.

¶ 36　　　*Csaszar*, the first Illinois decision to limit the right to a reasonable level of assistance at the second stage to formerly *pro se* defendants, did not discuss *People v. Mitchell*, which strongly indicates that a counseled defendant is entitled to a reasonable level of assistance. See *Mitchell*, 189 Ill. 2d at 358. Nor did the court offer any policy reasons for providing a reasonable level of assistance to second-stage defendants who were appointed counsel, but denying that guarantee to second-stage defendants who retained counsel at the first and second stages.

¶ 37　　　The *Csaszar* court asserted that the reasonable-level-of-assistance standard should be interpreted "under Supreme Court Rule 651(c)." *Csaszar*, 2013 IL App (1st) 100467, ¶ 16. None of the cases cited in *Csaszar* support this conclusion. *People v. Davis*, 156 Ill. 2d 149, 162 (1993), for instance, does not mention the reasonable-level-of-assistance standard, much less discuss its relationship with Rule 651(c). In *People v. Turner*, the court explained the relationship between the reasonable level of assistance and Rule 651(c) as follows:

　　　"[P]ost-conviction petitioners are entitled only to the level of assistance provided by the Post-Conviction Hearing Act. [Citation.] It is well settled that the Act requires counsel to provide a 'reasonable level of assistance' to petitioner in post-conviction proceedings. [Citation.] To that end, Supreme Court Rule 651(c) outlines the specific duties of appointed counsel in post-conviction proceedings." *Turner*, 187 Ill. 2d at 410.

Similarly, *People v. Owens*, cited by the *Csaszar* court, stated that "[s]ection 122-4 of the Code of Criminal Procedure *** and Supreme Court Rule 651 together ensure that post-conviction petitioners in this State receive a *reasonable level of assistance* by counsel in post-conviction

proceedings." (Emphasis added.) *Owens*, 139 Ill. 2d at 359. Neither *Turner* nor *Owens* suggests that the right to a reasonable level of assistance has been subsumed by Rule 651(c). On the contrary, they indicate that the rule is merely a vehicle for ensuring a reasonable level of assistance. See also *People v. Davis*, 382 Ill. App. 3d 701, 711 (2008) (" 'Reasonable assistance' includes compliance with the specific obligations of Rule 651(c) ***.").

¶ 38     The court further held that the right to a reasonable level of assistance for counseled defendants could not be found in the pre-Rule 651(c) cases, including *People v. Wales*, 46 Ill. 2d 79 (1970), *People v. Ford*, 40 Ill. 2d 440 (1968), *People v. Barnes*, 40 Ill. 2d 383 (1968), *People v. Wilson*, 40 Ill. 2d 378 (1968), *People v. Tyner*, 40 Ill. 2d 1 (1968), and *Slaughter*, 39 Ill. 2d at 285. *Csaszar*, 2013 IL App (1st) 100467, ¶ 17. However, those cases, decided between 1968 and 1970, could not have addressed the right to a reasonable level of assistance, because the Illinois Supreme Court first recognized that right in 1990. See *Owens*, 139 Ill. 2d at 359. The *Csaszar* court further claimed that, as in *Kegel*, the defendant in *Csaszar* sought to " 'disengage the guarantee of reasonable assistance from the underlying right to counsel such that the former can exist independently of the latter.' " *Csaszar*, 2013 IL App (1st) 100467, ¶ 18 (quoting *Kegel*, 392 Ill. App. 3d at 541). The *Kegel* court, however, was discussing the fact that the right to counsel does not arise in postconviction proceedings until the second stage and, therefore, there is no guarantee of counsel's performance at the first stage. *Kegel*, 392 Ill. App. 3d at 541. *Kegel* did not address the issue presented here and in *Csaszar*: whether defendants counseled at the first and second stages are entitled to a reasonable level of assistance at the second stage.

¶ 39     Finally, the *Csaszar* court noted that a postconviction attorney who represented a defendant at the first and second stages would still be subject to disciplinary action or a malpractice suit should he fail to perform competently. *Csaszar*, 2013 IL App (1st) 100467, ¶ 22. Disciplinary action and malpractice suits, however, are no substitute for a reasonable level of assistance. Where an attorney's deficient performance deprives a defendant with a meritorious claim of either his freedom or a new trial, for example, filing a complaint with the Attorney Registration and Disciplinary Commission would offer little solace.

¶ 40     We do not believe the legislature intended for private counsel retained through the first and second stages to be free to provide a level of assistance below that required of counsel appointed or retained at the second stage. Applying the same standards has the virtue not only of guaranteeing similar protections to similarly situated litigants, but also of simplicity. We see no need to further complicate postconviction proceedings.

¶ 41                    B. Application of the Reasonable-Level-of-Assistance Standard

¶ 42     We now apply this standard to the instant case. For the reasons discussed below, we conclude that postconviction counsel provided a reasonable level of assistance, where he attempted to overcome the procedural bar of *res judicata*.

¶ 43     Issues decided by the appellate court on direct appeal are barred by *res judicata* in postconviction proceedings. *Flores*, 153 Ill. 2d at 274. *Res judicata* helps ensure finality in

criminal litigation. *Id.* Procedural bars such as *res judicata* may be relaxed, however, where required by fundamental fairness. *People v. Orange*, 195 Ill. 2d 437, 448 (2001).

¶ 44　　Postconviction attorneys have a duty to attempt to overcome procedural bars, such as forfeiture, *res judicata*, and untimeliness. See, *e.g.*, *Turner*, 187 Ill. 2d at 414-15 (to provide a reasonable level of assistance, postconviction counsel must attempt to overcome the procedural bar of forfeiture); *People v. Perkins*, 229 Ill. 2d at 44 (postconviction counsel has a duty to attempt to overcome the procedural bar of timeliness); *People v. Schlosser*, 2012 IL App (1st) 092523, ¶¶ 22-23 (to provide a reasonable level of assistance, postconviction counsel must attempt to overcome the procedural bar of forfeiture).

¶ 45　　Here, postconviction counsel reproduced verbatim the following text from the brief he drafted and filed on direct appeal:

　　"From the beginning of the trial to the end of the case, and even during petitioner's Motion for New Trial, defense counsel pursued a theory of mercy–asking the judge to ignore the evidence in the case and convict petitioner of the unavailable charge of attempt delivery of a controlled. [*sic*]

　　This defense theory, which was not a valid legal defense, amounted to no theory at all, and left the judge with no choice but to convict petitioner as charged. ***

　　Obviously petitioner did not agree to sell multi-kilo amounts to someone that he had just met unless there was a 3rd party that had arranged or set up the transaction and vouched for the putative buyer. [Defendant] even cried out entrapment at sentencing: 'I am Alejandro Anguiano. I am not a drug dealer. I was just a drug abuser. And his cousin he was the one that induced me to do what I did, to find these guys for the cocaine.' Counsel has no duty to create a defense where none exists, but in this case there was a viable defense staring him in the face. Defense counsel's performance left the judge with no choice but to convict defendant of the offense as charged. In *United States ex rel. Barnard v. Lane*, 819 F.2d 798 (7th Cir. 1987), the court noted that '[t]he spectrum of counsel's legitimate tactical choices does not include abandoning a client's only defense in the hope that a jury's sympathy will cause them to misapply or ignore the law they have sworn to follow.' *Lane*, 819 F.2d at 805."

The argument sections in the brief and postconviction petition were each less than four pages. Thus, these cut-and-paste paragraphs constituted a significant portion of the argument in defendant's direct and collateral appeals. Had the petition's argument consisted solely of these paragraphs, it would have undoubtedly been barred by *res judicata* and counsel would not have provided a reasonable level of assistance. See *People v. Blair*, 215 Ill. 2d 427, 443 (2005) (*res judicata* bars consideration of issues raised and decided on direct appeal).

¶ 46　　In the postconviction petition, however, counsel elaborated on the entrapment claim, adding several paragraphs that discussed the informant who allegedly helped entrap defendant:

　　"24. If petitioner had been called to testify at trial he would have testified that the informant, known to him as 'Jose,' was introduced to him approximately a week to ten days before he was arrested. Petitioner had been working a snow plowing job and Jose told him that he wouldn't have to work that hard anymore if he would find a supplier

for his cousin, Pablo, who turned out to be an undercover officer. Jose won petitioner's confidence by doing cocaine together with petitioner. Over the next few days Jose repeatedly called petitioner asking him if he had found a supplier for 'Pablo.' Jose urged petitioner to find a supplier and they could charge Pablo $1000 more than the kilos actually cost. At one point petitioner told Jose that he did not want to deal with Pablo but Jose kept calling petitioner and urging him to make the deal.

25. Petitioner's testimony would be corroborated by the consensual overhear request wherein the affiant, Gutierrez, acknowledges that the transaction was arranged by an informant. [Citation.]

26. The fact that the informant arranged the transaction also gave rise to a Motion to Disclose the Informant.

27. This Motion, which had a likelihood of success, [citation], would have provided petitioner with an additional witness to his entrapment defense, or at least at a minimum, provided petitioner with a considerably greater bargaining position.

28. Petitioner asserts that because defense counsel failed to present an entrapment defense or file a Motion to Disclose the Informant, petitioner did not receive effective assistance of counsel ***."

Counsel also attached an affidavit Gutierrez submitted in seeking an eavesdropping order. In pertinent part, Gutierrez attested that a confidential source told him that defendant was willing to sell six kilograms of cocaine for $21,000 per kilogram and arranged a meeting between Gutierrez and defendant. Gutierrez's affidavit was not part of the record on direct appeal.

¶ 47 In its motion to dismiss, the State argued that "the appellate court considered and rejected the exact same issue" on direct appeal and the petition was "a prime example of an abuse of the system the [doctrine of *res judicata* was] designed to prevent."

¶ 48 During the hearing on the State's motion, postconviction counsel reiterated his arguments regarding entrapment. He claimed, however, that he was presenting new evidence, specifically, an application for an eavesdropping device: "this piece of paper that I add to the post conviction, the one that clearly shows or corroborates what the defendant will testify to, that there was phone communications between him and informant, that's something that I could not raise in front of the Appellate Court ***. *** [T]he Appellate Court was only bound by what was contained in the record ***." The circuit court agreed with the State: "the Appellate Court specifically talked about the very issues that are being raised right now. *** They discussed the possibility of an entrapment defense and found it lacking." The court granted the State's motion to dismiss.

¶ 49 Postconviction counsel was required to attempt to overcome the procedural bar of *res judicata*. *Turner*, 187 Ill. 2d at 414-15. Counsel demonstrated that he understood this procedural hurdle and attempted to overcome it by elaborating on the entrapment defense that trial counsel failed to present, attaching Gutierrez's affidavit, and responding to the State's *res judicata* argument during the hearing on its motion. Defendant has not explained what additional steps counsel should have taken to overcome this procedural bar. Similarly, although defendant complains that counsel failed to raise other possible constitutional claims,

he never asserts what additional claims counsel should have raised. Counsel's argument may not have been particularly compelling, but it appears to have been the best option available. See *Perkins*, 229 Ill. 2d at 51 (counsel fulfilled his duties, where, although his argument was not particularly compelling, it was the best option available). Although counsel did not persuade the circuit court, his performance was not so deficient that he failed to provide a reasonable level of assistance.

¶ 50    Nor are we convinced by defendant's argument that counsel failed to consult with him. Defendant's argument is based primarily on counsel's failure to file a Rule 651(c) certificate. However, because Rule 651(c) does not apply here, counsel was not required to file a certificate. Defendant adds that counsel's failure to raise additional issues in his postconviction petition further shows that counsel failed to consult with him. Again, defendant fails to state what issues counsel should have raised. We therefore reject defendant's argument.

¶ 51                                    CONCLUSION

¶ 52    For the forgoing reasons, we hold that postconviction counsel provided a reasonable level of assistance and affirm the second-stage dismissal of the instant postconviction petition.

¶ 53    Affirmed.