# Illinois Official Reports

## Appellate Court

---

***People v. Garcia-Rocha*, 2017 IL App (3d) 140754**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAIME GARCIA-ROCHA, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0754 |
| Filed | February 22, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 11-CF-1981; the Hon. Edward A. Burmila, Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Kerry J. Bryson, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justice Wright concurred in the judgment and opinion.<br>Justice McDade concurred in part and dissented in part, with opinion. |

¶ 1    The defendant, Jaime Garcia-Rocha, appeals the dismissal of his postconviction petition at the second stage of proceedings. The defendant argues that (1) his petition made a substantial showing that his due process rights were violated when the trial court failed to hold a proper fitness restoration hearing before accepting his guilty plea, (2) he received unreasonable assistance of postconviction counsel where postconviction counsel failed to adequately raise the issue concerning the fitness restoration showing, (3) his petition made a substantial showing that he received ineffective assistance of plea counsel where plea counsel failed to advise him that his guilty plea would result in presumptively mandatory deportation, and (4) he received unreasonable assistance of postconviction counsel regarding his ineffective assistance of plea counsel claim.

¶ 2                                    FACTS

¶ 3    The defendant was charged with aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(4) (West 2010)).

¶ 4    The trial court found that *bona fide* doubt existed as to the defendant's fitness and appointed the county psychologist to determine the defendant's fitness to stand trial.

¶ 5    A psychological report prepared by the county psychologist concluded that the defendant was mentally unfit to stand trial. Specifically, the report opined that the defendant lacked the ability to cooperate with his attorney, make reasoned decisions, or pay attention to court proceedings. The report stated that the defendant had issues with substance abuse and cognitive disruption and had a possible history of head injuries. The report opined that the defendant could be restored to fitness within one year with inpatient treatment.

¶ 6    A fitness hearing was held. The parties stipulated that, if called to testify, the county psychologist would testify consistently with the facts, opinions, and conclusions in her report. The trial court entered an order finding that the defendant was unfit to stand trial and there was a probability that the defendant could be restored to fitness within a year with treatment. The trial court remanded the defendant to the Department of Human Services (DHS) on an inpatient basis.

¶ 7    Approximately two months later, a fitness report signed by the defendant's therapist and psychiatrist was filed. The report opined that the defendant was fit to stand trial with medication.

¶ 8    At a subsequent hearing, defense counsel informed the court that the last report from DHS indicated that the defendant had been restored to fitness. The trial court then stated:

    "Show the Court is in receipt of the report from the [DHS]. Pursuant to their statutory duties, they report to the Court that he's been restored to fitness and he is now ready to proceed with trial. Show that his custody is transferred. He is remanded to the custody of the Sheriff of Will County."

¶ 9    Defense counsel then indicated that the parties had a proposed plea agreement to present to the court. The defendant agreed to plead guilty to aggravated fleeing or attempting to elude a peace officer in exchange for a sentence of 180 days in jail with credit for time served and 24 months' probation. The trial court questioned the defendant as follows regarding the medication he was taking:

"THE COURT: Are you taking any kind of drugs or medication that's prescribed for you by a doctor other than what I have already been advised of?

THE DEFENDANT: Only the one giving it there.

THE COURT: Did you take that medication today?

THE DEFENDANT: I drink it in the afternoons.

THE COURT: Okay. So the fact that you haven't taken it yet, does that interfere in any way with your ability to communicate with [defense counsel]?

THE DEFENDANT: No."

¶ 10      After admonishing the defendant pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997), the trial court asked the defendant how he pled. The defendant replied, "I plead guilty." The following exchange then occurred:

"THE COURT: Mr. Garcia, I have a question for you, are you an American citizen?

THE DEFENDANT: No.

THE COURT: Do you understand that by pleading guilty you are putting at risk your ability to remain in the United States or ever become a citizen? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You want to go ahead with this anyway?

THE DEFENDANT: Yes."

¶ 11      The trial court then accepted the defendant's plea and sentenced him to 180 days in jail with credit for 180 days served and 24 months' probation pursuant to the plea agreement.

¶ 12      The defendant filed a postconviction petition through privately retained counsel. The petition stated: "The Defendant-Petitioner has suffered from mental and emotional disabilities. On February 7, 2012, the Court, based on a Psychological Evaluation from [the county psychologist], found that the Defendant-Petitioner was 'unfit to stand trial, but may be restored to fitness within one year.' " The petition argued that the defendant did not fully understand the implications and consequences of his guilty plea, and the defendant would have insisted on going to trial had he understood. The petition alleged that after he pled guilty, the defendant was "turned over to Immigration and Customs Enforcement, of the US Department of Homeland Security, (ICE), which in turn commenced removal proceedings against him."

¶ 13      The petition argued that the defendant received ineffective assistance of plea counsel in that plea counsel did not properly advise the defendant as to the immigration consequences of his guilty plea pursuant to *Padilla v. Kentucky*, 559 U.S. 356 (2010). The petition also argued that the defendant did not possess the requisite mental state at the time of the offense to be found guilty had the matter gone to trial. Documentation from the defendant's removal proceedings was attached to the petition as an exhibit. The defendant filed an affidavit along with his petition swearing and affirming that the statements in the petition were true and correct.

¶ 14      The trial court found that the defendant's postconviction petition presented the gist of a constitutional claim and advanced the petition for second-stage proceedings.

¶ 15    The State filed a motion to dismiss the defendant's postconviction petition.[1] The motion argued that the defendant's claim that he did not fully understand the implications and consequences of his plea was belied by the colloquy between the trial court and the defendant prior to the plea. The State argued that the defendant had not articulated a trial defense or made a claim of actual innocence regarding his claim of ineffective assistance of plea counsel. The State also noted that the trial court had admonished the defendant of the immigration consequences of his guilty plea.

¶ 16    After hearing arguments, the trial court granted the State's motion to dismiss. In delivering its ruling, the trial court reasoned as follows regarding the prior finding of unfitness:

> "The Court was aware of the fact that the defendant had at one time been found unfit, but the statute says that there's three different sources by which the court can have that information brought to its attention, by defense counsel, by State or the court on its own motion. And the Court of course had the opportunity to observe the defendant throughout the entire proceeding. I asked him the questions about his medication, there was nothing that came to the Court's attention that led me to believe even momentarily that the defendant was not fit to proceed or was acting under the duress of a mental disability."

¶ 17                                    ANALYSIS
¶ 18                    I. Failure to Hold Fitness Restoration Hearing
¶ 19    On appeal, the defendant argues that the trial court erred in dismissing his postconviction petition because he made a substantial showing that the trial court violated his due process rights by accepting his guilty plea without first conducting an adequate fitness restoration hearing. Specifically, the defendant contends that the trial court erred in merely accepting the DHS report that the defendant had been restored to fitness without conducting an independent analysis of the report or exercising any discretion in finding the defendant fit.

¶ 20    We find that the defendant failed to raise this argument in his postconviction petition. While the petition referenced the trial court's prior finding of unfitness, the petition made no assertion of a due process violation nor did it challenge the fitness restoration hearing or lack thereof. The petition merely alleged that the defendant "has suffered from mental and emotional disabilities" and was previously found unfit. These allegations do not even approach making a substantial showing that the defendant's due process rights were violated when the trial court failed to hold a proper fitness restoration hearing. See *People v. Domagala*, 2013 IL 113688, ¶¶ 33-35 (holding that at the second stage of postconviction proceedings, the burden is on the defendant to make a substantial showing of a constitutional violation).

¶ 21    As the defendant did not raise the issue in his postconviction petition, he may not raise it for the first time on appeal from the dismissal of the petition. *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006).

---

[1]The State's motion is entitled "Motion to Dismiss Second Amended Post-Conviction Petition." We note, however, that only one postconviction petition, which was filed April 4, 2014, appears in the record. The State's motion only references the April 4 petition.

Having found that the issue of the trial court's failure to hold a fitness restoration hearing cannot be raised for the first time on appeal, we now turn to the question of whether postconviction counsel's failure to amend the petition to include said issue constitutes unreasonable assistance.

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) "provides a three-stage process for adjudicating [postconviction] petitions." *People v. Cotto*, 2016 IL 119006, ¶ 26. At the first stage, the trial court summarily dismisses the petition if it determines that the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014). If the petition survives the first stage, it advances to the second stage, at which time the trial court may appoint counsel for an indigent defendant. *Cotto*, 2016 IL 119006, ¶ 26; see also 725 ILCS 5/122-4 (West 2014).

A defendant has no constitutional right to the assistance of counsel in postconviction proceedings. *Cotto*, 2016 IL 119006, ¶ 29. The Act guarantees "only a 'reasonable' level of assistance, which is less than that afforded by the federal or state constitutions." *Pendleton*, 223 Ill. 2d at 472 (quoting *People v. Munson*, 206 Ill. 2d 104, 137 (2002)). In *Cotto*, our supreme court held that "there is no difference between appointed and privately retained counsel in applying the reasonable level of assistance standard to postconviction proceedings. Both retained and appointed counsel must provide reasonable assistance to their clients after a petition is advanced from first-stage proceedings." *Cotto*, 2016 IL 119006, ¶ 42.

It is unclear whether the defendant is arguing that his privately retained postconviction counsel was unreasonable for failing to raise the issue in his initial petition, failing to amend the petition at the second stage of proceedings to include the issue, or both. At one point in the defendant's brief, the defendant argues that postconviction counsel "failed to make a claim that defendant *** had not been found restored to fitness at a proper restoration hearing." At another point in the brief, the defendant argues that postconviction counsel "fail[ed] to properly amend defendant's post-conviction petition to state a due process claim based upon the inadequate fitness restoration proceedings."

Initially, we find that the defendant may not sustain a claim of unreasonable assistance of postconviction counsel based on postconviction counsel's failure to include the issue in the initial petition. While the *Cotto* court recognized that "[b]oth retained and appointed counsel must provide reasonable assistance to their clients after a petition is advanced from first-stage proceedings" (*id.*), neither the legislature nor Illinois courts recognized any right to counsel at the first stage of postconviction proceedings. See 725 ILCS 5/122-2.1(a)(2), 122-4 (West 2014); *People v. Shipp*, 2015 IL App (2d) 131309, ¶ 24 ("Neither statute nor case law provide for a freestanding right to reasonable assistance of counsel at first-stage postconviction proceedings."); *People v. Kegel*, 392 Ill. App. 3d 538, 540-41 (2009).[2] See also *People v. Ligon*, 239 Ill. 2d 94, 118 (2010) ("Accordingly, we conclude that defendant had no right to the appointment of counsel at the summary dismissal stage of his postconviction proceeding

---

[2]We acknowledge that section 122-2.1 of the Act (725 ILCS 5/122-2.1 (West 2014)) provides for the appointment of counsel at the first stage of postconviction proceedings for petitioners who are under a sentence of death. However, the death penalty was abolished in Illinois effective July 1, 2011. 725 ILCS 5/119-1 (West 2014).

\*\*\*."); *People v. Greer*, 212 Ill. 2d 192, 203 (2004) ("[T]he Act does not provide for appointment of counsel unless an indigent defendant's petition survives the first stage of postconviction proceedings."); *People v. Pearson*, 216 Ill. 2d 58, 70 (2005) ("The Act does not authorize appointment of counsel at the first stage of the proceedings for a petitioner who is not under a sentence of death."); *People v. Coulter*, 352 Ill. App. 3d 151, 155 (2004) ("[A]t the first stage of postconviction proceedings, defendant is not entitled to the appointment of counsel to assist in the preparation of his petition \*\*\*.").

¶ 28    Specifically, we note the holding in *Kegel*, 392 Ill. App. 3d at 540-41. In *Kegel*, the defendant's postconviction petition, which was prepared by privately retained counsel, was summarily dismissed at the first stage of postconviction proceedings. *Id.* at 539. The *Kegel* defendant argued that his postconviction counsel provided unreasonable assistance for failing to assert a certain claim in the petition. *Id.* The defendant contended that an attorney retained to draft an initial postconviction petition should be held to the same reasonable assistance standard as an attorney appointed to represent a defendant at the second stage of proceedings. *Id.* The *Kegel* court rejected the defendant's claim, reasoning that the defendant's right to counsel never arose under the Act because the Act only guarantees a right to counsel if a petition proceeds to the second stage. *Id.* at 541. The court noted that to accept the defendant's argument "would lead to disparate treatment among prisoners who are similarly situated except with regard to the means to obtain counsel." *Id.*

¶ 29    In reaching our finding that the defendant had no right to the reasonable assistance of counsel at the first stage of proceedings, we acknowledge that the *Cotto* court noted: "This court has also required reasonable assistance from privately retained postconviction counsel at the first and second stage of postconviction proceedings." *Cotto*, 2016 IL 119006, ¶ 32 (citing *People v. Mitchell*, 189 Ill. 2d 312, 358 (2000)). In *Mitchell*, unlike in the instant case, the defendant was sentenced to death. *Mitchell*, 189 Ill. 2d at 320. Petitioners sentenced to death had a statutory right to the assistance of appointed counsel at the first stage of postconviction proceedings. 725 ILCS 5/122-2.1(a)(1) (West 1992); see also *People v. Brisbon*, 164 Ill. 2d 236, 243 (1995). Therefore, we find that any right to reasonable assistance of counsel that the *Mitchell* petitioner may have had at the first stage of proceedings does not apply to the defendant in the instant case, who had no statutory right to counsel at the first stage of proceedings. 725 ILCS 5/122-2.1(a)(2) (West 2014); *Pearson*, 216 Ill. 2d at 70 ("The Act does not authorize appointment of counsel at the first stage of the proceedings for a petitioner who is not under a sentence of death.").

¶ 30    The dissent takes a contrary view, asserting that the application of the reasonable assistance standard at the first and second stages of proceedings in *Mitchell* is equally applicable in this case, where there is no statutory right to counsel at the first stage of proceedings. In so doing, the dissent "seeks to disengage the guarantee of reasonable assistance from the underlying right to counsel such that the former can exist independently of the latter." *Kegel*, 392 Ill. App. 3d at 541. We find no support in the Act or the case law for such a position.

¶ 31    We also reject the dissent's comparison of the instant case to *People v. Csaszar*, 2013 IL App (1st) 100467. The dissent is correct that in both the instant case and in *Csaszar*, the defendants were represented by retained counsel during the first and second stages of postconviction proceedings and argued on appeal that retained counsel provided unreasonable assistance in failing to include certain issues in their petitions. See *id.* ¶¶ 11-15. However, the

holding in *Csaszar*, which was overruled in *Cotto*, 2016 IL 119006, ¶ 42, was that a postconviction petitioner who retains private counsel is not entitled to a reasonable level of assistance *at all during any stage of postconviction proceedings*. *Csaszar*, 2013 IL App (1st) 100467, ¶ 25. Our holding, on the other hand, is that the right to reasonable assistance of counsel for postconviction petitioners who retain private counsel does not attach until the second stage of postconviction proceedings.

¶ 32    We disagree with the dissent's claim: "In overruling *Csaszar*, the supreme court made no distinction between the first and second stage challenges." *Infra* ¶ 58. In fact, the *Cotto* court explicitly limited its holding to second-stage challenges twice in the same paragraph in which it overruled *Csaszar*:

> "Accordingly, we find that the appellate court in this case erred when it concluded that defendant was not entitled to reasonable assistance from his retained counsel *at second-stage proceedings*. We also overrule *Csaszar* for reaching the same erroneous conclusion. We hold that there is no difference between appointed and privately retained counsel in applying the reasonable level of assistance standard to postconviction proceedings. Both retained and appointed counsel must provide reasonable assistance to their clients *after a petition is advanced from first-stage proceedings*." (Emphases added.) *Cotto*, 2016 IL 119006, ¶ 42.

¶ 33    Essentially, the *Csaszar* court held that postconviction petitioners who retain private counsel have *fewer rights* than petitioners who receive appointed counsel. The dissent would grant petitioners who retain private counsel *more rights* than those who file *pro se* initial petitions. Our holding is that *all postconviction petitioners have the same right to counsel*—namely, no right at the first stage and the right to reasonable assistance thereafter. Our position is consistent with the holding in *Cotto*. See *id.* ("[T]here is no difference between appointed and privately retained counsel in applying the reasonable level of assistance standard to postconviction proceedings.").

¶ 34    Additionally, we disagree with the dissent's conclusion that our holding would preclude a postconviction petitioner from attacking the quality of retained counsel's representation in preparing an initial petition either before the Attorney Registration and Disciplinary Commission (ARDC) or in a lawsuit against the attorney. An attorney's ethical obligation to competently represent his or her client is completely separate from a postconviction petitioner's right to the reasonable assistance of counsel under the Act. Our holding is that a postconviction petitioner cannot maintain a claim of unreasonable assistance of postconviction counsel *in the postconviction proceedings* on the basis that retained counsel failed to include an issue in an initial postconviction petition. Nothing in our holding would prevent a postconviction petitioner from suing such an attorney for malpractice or from filing a complaint with the ARDC.

¶ 35    Having found that the defendant's postconviction counsel did not provide unreasonable assistance in failing to include the fitness restoration hearing issue in the petition at the first stage of proceedings, we also find that postconviction counsel did not render unreasonable assistance in failing to amend the petition at the second stage of proceedings. Specifically, we reject the defendant's argument that the fitness restoration issue was obvious and, consequently, postconviction counsel acted unreasonably in failing to raise it. Generally, the right to reasonable assistance of postconviction counsel at the second stage of proceedings does not afford petitioners the right to have all "obvious" issues raised by counsel in an

amended petition. Rather, when counsel is appointed at the second stage of proceedings to represent a defendant who initially filed a *pro se* petition, counsel is required only to investigate and present the claims raised in the *pro se* petition. *People v. Davis*, 156 Ill. 2d 149, 164 (1993). Our supreme court has held that appointed postconviction counsel does not render deficient assistance when he or she fails to raise issues the defendant did not raise in the initial *pro se* petition. *Pendleton*, 223 Ill. 2d at 476 ("While postconviction counsel *may* conduct a broader examination of the record [citation], and may raise additional issues if he or she so chooses, there is no obligation to do so." (Emphasis in original.)).

¶ 36    We acknowledge that, unlike in the cases discussed above, the defendant in the instant case was represented by counsel at the first stage of proceedings. Nevertheless, based on the above authority, we find that the defendant did not received unreasonable assistance of postconviction counsel at the second stage of proceedings based on counsel's failure to raise the fitness restoration issue in an amended petition. Were we to hold otherwise, we would be construing the right to reasonable assistance of postconviction counsel at the second stage of proceedings to afford greater rights to petitioners who were represented by counsel at the first stage than those who were unrepresented. Such a result is contrary to the holding in *Cotto*. See *Cotto*, 2016 IL 119006, ¶ 42 ("We hold that there is no difference between appointed and privately retained counsel in applying the reasonable level of assistance standard to postconviction proceedings.").

¶ 37                                III. Ineffective Assistance of Plea Counsel

¶ 38    The defendant next argues that the trial court erred in dismissing his postconviction petition at the second stage of proceedings because he made a substantial showing that he received ineffective assistance of plea counsel where plea counsel failed to advise him that he faced presumptively mandatory deportation if he pled guilty.

¶ 39    To establish that he received ineffective assistance of counsel, the defendant was required to show (1) plea counsel's performance was deficient and (2) the defendant was prejudiced as a result of the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); see also *Domagala*, 2013 IL 113688, ¶ 36. Because the trial court advanced the defendant's petition to the second stage of postconviction proceedings, the burden was on the defendant to make a substantial showing of a claim of ineffective assistance of plea counsel through the allegations in his petition, as well as any accompanying documentation. *Domagala*, 2013 IL 113688, ¶¶ 33-35. At the second stage of proceedings, the petitioner's allegations are taken as true unless they are affirmatively rebutted by the record. *Id.* ¶ 35.

¶ 40    We find that the defendant's claim of ineffective assistance of plea counsel is controlled by the United States Supreme Court's decision in *Padilla*, 559 U.S. 356, and the Illinois Supreme Court's recent decision in *People v. Valdez*, 2016 IL 119860. In *Padilla*, the Court held that criminal defense attorneys must inform their clients whether a guilty plea would carry a risk of deportation. *Padilla*, 559 U.S. at 374. The Court held that the *Padilla* defendant's counsel had a duty to inform him that he faced mandatory removal where the defendant pled guilty to transporting a large amount of marijuana. *Id.* at 359, 368-69. The court reasoned:

> "[C]ounsel could have easily determined that [the defendant's] plea would make him eligible for deportation simply from reading the text of the [immigration] statute, which addresses not some broad classification of crimes but specifically commands removal

for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id.* at 368.

¶ 41　　The Court also held that "[w]hen the law is not succinct and straightforward \*\*\*, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369.

¶ 42　　Our supreme court recently applied the holding of *Padilla* in its opinion in *Valdez*, 2016 IL 119860, ¶ 22. The *Valdez* defendant pled guilty to burglary as part of a negotiated plea agreement. *Id.* ¶ 6. Before accepting the defendant's plea, the trial court admonished the defendant, pursuant to section 113-8 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-8 (West 2012)), that a burglary conviction " 'may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " *Valdez*, 2016 IL 119860, ¶ 8 (quoting 725 ILCS 5/113-8 (West 2012)). The defendant stated that he understood and still wanted to plead guilty. *Id.* The *Valdez* defendant then filed a motion to withdraw guilty plea, arguing that his plea counsel provided ineffective assistance by failing to inform him of the consequences his guilty plea would have on his resident alien status. *Id.* ¶ 9.

¶ 43　　The *Valdez* court held that under *Padilla*, plea counsel was only required to admonish the defendant that his guilty plea may have immigration consequences. *Id.* ¶ 22. The court reasoned that, unlike the drug offense in *Padilla*, the immigration consequences of an Illinois burglary conviction are not apparent on the face of the immigration statute. *Id.* ¶ 26. Rather, burglary was a deportable offense because it fell into the category of "crimes involving moral turpitude." *Id.* ¶ 22. The *Valdez* court reasoned:

> "*Padilla* strongly suggests that where a crime falls within a 'broad classification' of offenses, such as crimes involving moral turpitude, the law is not 'succinct and straightforward.' [Citation.] Consequently, where the face of the statute does not succinctly, clearly, and explicitly indicate that a conviction subjects a defendant to mandatory deportation, counsel need only advise a defendant that his plea 'may' have immigration consequences." *Id.* (quoting *Padilla*, 559 U.S. at 368-69).

¶ 44　　Additionally, the *Valdez* court held that "[a]ny prejudice suffered by [the] defendant as a result of counsel's failure [to advise the defendant of the immigration consequences of his plea] was cured by the circuit court's strict compliance with section 113-8 of the Code." *Id.* ¶ 32.

¶ 45　　In the instant case, as in *Valdez*, the defendant pled guilty to a crime that was a deportable offense because it fell into the broad category of crimes involving moral turpitude under the immigration statute. See *id.* ¶ 22; see also 8 U.S.C. § 1227(a)(2)(A)(i) (2012). As noted by the *Valdez* court, the immigration statute lists "[c]rimes of moral turpitude" as a category of deportable offenses but does not define what kinds of offenses fall into this category. 8 U.S.C. § 1227(a)(2)(A)(i) (2012); see also *Valdez*, 2016 IL 119860, ¶ 20. As the immigration consequences of a conviction for aggravated fleeing and eluding a peace officer are not apparent on the face of the immigration statute, we find that plea counsel was required only to warn the defendant "that his plea 'may' have immigration consequences." *Valdez*, 2016 IL 119860, ¶ 22 (quoting *Padilla*, 559 U.S. at 368-69). Thus, taking the allegations in the postconviction petition as true, plea counsel's failure to advise the defendant that his plea may have immigration consequences constituted deficient performance.

¶ 46    However, like in *Valdez*, we find that the deficient performance of plea counsel was cured by the trial court's admonishments to the defendant at the guilty plea hearing. The trial court advised the defendant: "[B]y pleading guilty you are putting at risk your ability to remain in the United States or ever become a citizen." Although the wording of this admonishment was not strictly compliant with section 113-8 of the Code (725 ILCS 5/113-8 (West 2012)), we find that the admonishment was sufficient to advise the defendant that his plea " 'may' have immigration consequences," which is all that was required. *Valdez*, 2016 IL 119860, ¶ 22 (quoting *Padilla*, 559 U.S. at 368-69).

¶ 47                    IV. Unreasonable Assistance of Postconviction Counsel—
                           Failure to Adequately Allege Prejudice

¶ 48    As we have found that the trial court's admonishments cured any prejudice resulting from plea counsel's deficient performance, we need not reach the defendant's argument that his postconviction counsel failed to adequately allege and argue prejudice in the postconviction petition.

¶ 49                                    CONCLUSION
¶ 50    The judgment of the circuit court of Will County is affirmed.

¶ 51    Affirmed.

¶ 52    JUSTICE McDADE, concurring in part and dissenting in part.
¶ 53    The majority has (1) declined to decide the defendant's claim that the trial court erred in not conducting a fitness restoration hearing because he did not raise that issue in his postconviction petition; (2) found that his retained postconviction counsel had no obligation to provide reasonable assistance at the first stage of the proceedings and, further, did not provide unreasonable assistance in failing to amend the petition to include that issue; and (3) found no error in plea counsel's failure to advise him that he faced presumptively mandatory deportation if he pled guilty. Because of the supreme court's recent decision in *People v. Valdez*, 2016 IL 119860, I concur with the disposition on the third issue and dissent as follows from the decision on the first and second.
¶ 54    I believe the majority misreads and misapplies *People v. Cotto*, 2016 IL 119006. In that case, the supreme court said:

> "This court has also required reasonable assistance from privately retained postconviction counsel at the first and second stage of postconviction proceedings. See *People v. Mitchell*, 189 Ill. 2d 312, 358 (2000) (reviewing retained counsel's performance under the reasonable assistance standard). Notably, this court has never held that the reasonable assistance standard is inapplicable to a postconviction defendant who retained private counsel or otherwise distinguished between appointed and retained counsel for purposes of that standard." *Id.* ¶ 32.

The majority has attempted to distinguish the supreme court's reference to *Mitchell* by pointing out that the Act did authorize *appointment* of counsel at the first stage for persons convicted of capital murder. See *supra* ¶ 29. The supreme court itself made no such distinction in *Cotto*.

¶ 55    The court also stated:

> "We hold that there is no difference between appointed and privately retained counsel in applying the reasonable level of assistance standard to postconviction proceedings. Both retained and appointed counsel must provide reasonable assistance to their clients after a petition is advanced from first-stage proceedings." *Cotto*, 2016 IL 119006, ¶ 42.

¶ 56    I suggest that the supreme court's reference to first-stage proceedings in the last sentence of paragraph 42 is because that is the posture of the case the court had under consideration and does not imply any lessening of its earlier evaluation in *Mitchell* of the nature and reach of retained postconviction counsel's obligations. As the *Cotto* court stated:

> "The primary issue in this appeal is whether postconviction petitioners who retain private counsel are entitled to a reasonable level of assistance, the same level of assistance guaranteed to *pro se* petitioners with appointed counsel *after a petition advances from first-stage proceedings under the Post-Conviction Hearing Act* [citation]." (Emphasis added.) *Id.* ¶ 25.

¶ 57    By contrast, the challenge in the instant case is to postconviction counsel's failure to adequately raise the claimed shortcomings in his fitness restoration hearing in the *initial* petition. It seems to me that, in essence, when a prisoner retains counsel to prepare the initial postconviction petition, the first and second stages effectively merge and it is the job of retained counsel to both identify and raise those issues that could rise to the level of constitutional claims *and* to put them in proper form for the court's consideration. Garcia-Rocha claims that his retained counsel did neither.

¶ 58    Further, I draw support from the fact that the case of *People v. Csaszar*, 2013 IL App (1st) 100467, which the court overruled in *Cotto*, stood in the same posture as our case—that is, the defendant hired private counsel to file his postconviction petition, and the petition was dismissed at the second stage. On appeal, Csaszar, who had drafted, but never filed, a preliminary postconviction petition, challenged his retained counsel's failure to "further investigate[ ] the claim Csaszar made in his draft postconviction petition that the State tampered with the videotape of his conversation with Shaffer." *Id.* ¶ 15. Thus, Csaszar's appeal included a challenge to his retained counsel's performance at both the first and second stages. In overruling *Csaszar*, the supreme court made no distinction between the first and second stage challenges.

¶ 59    The majority, however, makes a legal finding that there is no duty on the part of retained counsel to provide reasonable assistance at the first stage. In additional support of this conclusion, the majority echoes the concern expressed by the court in *People v. Kegel*, 392 Ill. App. 3d 538, 541 (2009), that acceptance of the defendant's argument "would lead to disparate treatment among prisoners who are similarly situated except with regard to the means to obtain counsel." If the general assembly shared the concern expressed by the *Kegel* court and the majority in the instant case, it could easily have required, in all cases, that the initial postconviction petition be prepared and submitted *pro se*. It did not do that, leaving (1) a clear option for a prisoner who is financially able to retain counsel to prepare the original petition and (2) the very real possibility that in postconviction proceedings, as in numerous other situations throughout our criminal and civil courts, financially advantaged parties may (or may not) receive qualitatively higher levels of representation.

¶ 60    Moreover, under the position espoused by the majority in the instant case, a complaint attacking the quality of representation in preparation of the initial petition raised by

Garcia-Rocha in this court (or in the ARDC) can be completely defeated by a defense that "even though the defendant hired me and is paying me, I am excused from any of my professional, ethical obligations because this is the first stage of a postconviction proceeding and no standards apply to me." As I see it, this is wholly untenable and totally wrong. As the United States Supreme Court said in *McCoy v. Court of Appeals of Wisconsin, District 1*, 486 U.S. 429, 438 (1988):

> "Every advocate has essentially the same professional responsibility whether he or she accepted a retainer from a paying client or an appointment from a court. The appellate lawyer must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal. In preparing and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve the client's interest to the best of his or her ability."

¶ 61    In light of the foregoing, I would find that Garcia-Rocha's retained counsel had an obligation to provide reasonable assistance at the first stage and all stages of postconviction proceedings. I would also find that, because there is no evidence in the record that the trial court exercised independent discretion in finding the defendant fit to stand trial, retained counsel's failure to include that issue in the initial postconviction petition constituted unreasonable assistance. For these reasons, I would find that this case should be remanded for further proceedings in accord with the Act.