2024 IL App (1st) 220423-U

No. 1-22-0423

Order filed April 24, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 14956 |
| | ) | |
| ANTHONY MALCOLM, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) did not apply because appointed counsel filed defendant's postconviction petition; and (2) second-stage dismissal of defendant's postconviction petition was proper because defendant failed to make a substantial showing that trial counsel provided ineffective assistance by not moving to suppress defendant's custodial statements.

¶ 2    The circuit court dismissed defendant Anthony Malcolm's petition for postconviction relief at the second stage of proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)).

¶ 3    On appeal, defendant argues that (1) where appointed counsel filed the postconviction petition, postconviction counsel failed to provide the reasonable assistance guaranteed by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) by failing to add to the petition the claim that trial counsel rendered ineffective assistance by failing to move to suppress defendant's custodial statements based on allegations that the police detectives improperly questioned him without *Miranda* warnings, then gave the warnings and questioned him again, and (2) defendant made a substantial showing of ineffective assistance of trial counsel for not filing a motion to suppress defendant's custodial statements based on his inability to knowingly waive his *Miranda* rights due to his intoxication.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                I. BACKGROUND

¶ 6    Defendant was charged, along with codefendants Malik Jones and Nicholas Ayala, with the robbery and first degree murder of Delfino Mora, a person over the age of 60 years. Defendant elected a bench trial. In his opening statement, defense counsel from the Law Offices of Chicago-Kent College of Law stressed that defendant was not legally accountable for his codefendants actions and defendant's recorded statements disproved his accountability and indicated that the attack on the victim was a spontaneous incident where defendant was merely present and used a cellphone to record the incident.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7    The evidence showed that at about 5 a.m. on July 10, 2012, the victim left his home and drove his truck to collect scrap metal. Around that time, a resident in the neighborhood saw three individuals standing near the end of the alley by West Rosemont Avenue and North Artesian Avenue in Chicago. The individuals laughed and commented about someone snoring. Later that morning, someone called the police about a man down in the alley near 6308 North Artesian Avenue. A patrol officer found the victim lying on the ground, unresponsive but still breathing. The victim had no wallet or cellphone in his pockets. The patrol officer learned the victim's identity from information obtained from the victim's nearby parked truck. The victim was taken to a hospital, and the patrol officer went to the victim's home and informed his family. The victim was pronounced dead the next afternoon. An autopsy concluded that the victim died from blunt head trauma sustained from an assault.

¶ 8    Meanwhile, on July 10, the victim's son received a phone call from a friend who said she and her boyfriend had seen a video on Facebook of a man being punched. She and her boyfriend recorded the video off of Facebook and met the victim's son at the police station to speak with detectives. The victim's son watched the video and identified his father as the victim in the video.

¶ 9    At trial, the State played this video, which was taken from a cellphone. The video shows codefendant Malik Jones walking in an alley toward the victim in the distance. The victim is standing near a dumpster. Jones says, "I think I'm gonna knock this motherf*cker out, Joe. Here, somebody hold my phone. Vega's finna hit him after." Codefendant Nicholas Ayala, a.k.a. Vega, takes Jones's cellphone. The voice of a third male is heard, asking Ayala, "Are you recording, n*gga?" Ayala responds, "Hell yeah, I'm recording. I'm going to give it to you after he [Jones]

hit[s] him [the victim]." The third male, however, tells Ayala to give him the phone now, and Ayala complies.

¶ 10 Jones yells to the victim about money in the victim's pockets, stands next to the victim, and threateningly asks why the victim touched him. Ayala stands in front of the victim, and the third male stands to the right of Ayala and continues recording the incident. The victim speaks to Jones in what seems to be Spanish, and then speaks to Ayala, who says he does not know what the victim is saying. Jones turns to the camera and says, "Nation." Ayala responds, "Nation." Then Jones suddenly punches the victim in the head, saying, "B*tch." The victim falls backward to the ground, striking his head on the pavement. Jones, Ayala, and the third male walk away to the end of the alley. One of them says, "He's knocked out cold." Someone else says, "Damn!" There is the sound of laughter.

¶ 11 Detective Juan Carlos Morales testified about the course of the investigation, which included the arrests of Jones and Ayala on July 14, 2012. At about 9:20 a.m. on that same day, Detective Morales and his partner, Detective Taraszkiewicz, arrested defendant and brought him to the police station. Detective Morales placed defendant in an interview room with an electronic recording interrogation system (ERI), which was switched on. At 11:15 a.m., Detective Taraszkiewicz read defendant the *Miranda* rights and defendant agreed to talk to them. Detective Morales also questioned defendant two more times in the hours that followed.

¶ 12 The State played three clips from the ERI video (a 2-minute clip, a 10-minute clip, and a 20-minute clip), which showed defendant sitting on a bench in the interrogation room. In the first clip, starting at 11:15 a.m., Detective Taraszkiewicz reads defendant the *Miranda* warnings. When

asked if he understands the warnings, defendant either nods his head or responds affirmatively. At one point he mumbles, "I know *Miranda* rights."

¶ 13     In the second clip, which starts at 11:49 a.m., Detective Morales questions defendant, telling him that his denial about being present at the scene "looks bad." During the interview, defendant often mumbles his statements. He also holds his arms straight out in front of his body to make a point. He eventually admits that he was walking with Jones and Ayala in the alley and saw Jones "punch the guy out cold." Defendant knew of a game called "point 'em out, knock 'em out," but said that he was not playing that game. Initially, defendant said they were not playing the game and the assault was just a random incident. Later, defendant said Jones probably was playing that game at the time of the assault. Defendant also admitted that he filmed the attack.

¶ 14     In the third clip, defendant states that Jones asked a "Mexican guy" for money, the victim said something, and Jones then hit him. Jones initially ran off but returned, checking the victim's pockets.

¶ 15     The defense presented impeachment of Detective Morales's testimony by showing that he did not recall defendant saying various things, like that defendant was shocked by the beating. In closing argument, defense counsel contended that defendant's statements to the detectives established that defendant was merely present and lacked accountability for the murder and robbery perpetrated by Jones and Ayala. Counsel asserted that defendant's recorded statements established that there was no plan, agreement, or common design to perpetrate the offenses, that it was not illegal for defendant to have watched or recorded the crimes, and that defendant's actions did not render him accountable.

¶ 16    The trial court found defendant guilty of first-degree murder and robbery based on a theory of accountability. The court found that defendant's statements to the police were deceptive and he clearly knew what Jones was going to do and assisted him in his goal of recording the attack and robbery. The court stated that it was a "sad travesty" that the victim died as the result of an apparent game. The court acknowledged that defendant could not be found guilty based on his mere presence and found that he took no action to call for help and was guilty as an accessory, aiding and abetting the offenses.

¶ 17    According to the presentence investigation report, defendant had no prior juvenile or adult record and no other pending charges. A rap sheet showed no contacts with the police besides this murder case. The court sentenced defendant to consecutive prison terms of 22 and 8 years for the murder and robbery, respectively.

¶ 18    On direct appeal, defendant, still represented by the same counsel as at trial, argued that (1) the State had not proven his accountability for the crimes, (2) the court had improperly relied on hearsay in finding that the crime was a game, and (3) the sentence failed to reflect defendant's lack of a criminal record and minimal role in the crime. This court affirmed, finding that the evidence was sufficient, no error occurred in the court's findings, and the sentence was not an abuse of discretion. *People v. Malcolm*, 2015 IL App (1st) 133406.

¶ 19    In October 2016, another attorney from the Law Offices of Chicago-Kent College of Law filed on behalf of defendant the postconviction petition at issue in this appeal. The petition alleged that defendant could not make a valid *Miranda* waiver because he was intoxicated when he was arrested and, thus, trial counsel was ineffective for not filing a motion to suppress defendant's

custodial statements. Counsel attached to the petition a DVD with ERI video from the morning of July 14 for periods not shown at trial, with the exception of the *Miranda* warnings.

¶ 20 The video shows Detective Morales and defendant walk into an interrogation room. Detective Morales leaves the room and closes the door, and defendant sits on the narrow metal bench. Defendant loudly says, "Can I go home? I keep telling y'all I don't know nothin'." For the next 50 minutes, defendant talks out loud, sometimes looking directly at the ERI camera. During his statements, he often mumbles, sometimes to the point of being unintelligible. He says that he does not know Jones, or the Jones he knows "ain't hurt nobody. He's a little b*tch." Defendant complains that they are going to offer him jail time, but he did not do anything. He mentions that he is considering becoming a police officer, but this is "lame," and he's "mad now." He also swears, stomps his feet, burps, yawns, rhythmically taps his feet on the floor, and whistles. At one point, he lies down on the narrow bench, balancing on his side and with one arm stretched above his head. He fiddles with some handcuffs attached to the bench. Later, he removes an object from his pocket and uses it to etch something on the metal bench. Three times, he walks to the door and politely knocks on it.

¶ 21 During this time, defendant's statements touch on several topics. He complains about the police and how they woke him up that morning to take him to the police station. He says he wants to go home to sleep before he has to be at work. He complains that he does not have to look at the police to listen to them, and he was not looking at them because he is tired. He says that if he is not under arrest, he should go home. He complains that the police should arrest the person who knocked the "n*gga" out. Defendant complains that the police are wasting his time. He mimics someone telling him to "sober up" and says that he is "as sober as [he] can be," knows what is

happening, and wants to go home. He also complains about being a suspect in "the motherf*cking battery case that supposedly killed a n*gga." Defendant repeatedly says he wants to call his father. Defendant says he is not a criminal just because he was arrested. He says he does not gang bang. He says the police department is "bogus," "I told you the motherf*cking answer to your question," and "you guys are lame as f*ck, trying to make a plan outside your door." Defendant refers to a court case where he was beaten up. Defendant says that they have him sitting there to sober up, and "it's [their] f*cking job to go catch the real criminals." Defendant repeats a few times that he is innocent, has been taken into custody for no reason, the police have brought him in for questioning, and he has told them his answer to their questions and now he is ready to go home and go to sleep because he has to go to work. Defendant complains about his attire (shorts and a T-shirt), says that he looks like a bum and will go to work "grimy" and "f*cked up." He says that he will "sue for not hearing [his] *Miranda* rights" and will get his justice.

¶ 22    At 10:40 a.m., defendant pounds on the bench with his hand, and Detective Morales opens the door. Defendant asks why he is there, and Detective Morales says they will talk "in a sec." Defendant continues to talk to himself and to the camera, on the same themes.

¶ 23    Detectives Morales and Taraszkiewicz enter the room at about 11:15 a.m., saying they cannot talk now but will later. Defendant states that he is not under arrest, but the detectives tell him that he is under arrest. Defendant asks what he is under arrest for, and the detectives agree to talk to him now. Detective Taraszkiewicz then reads defendant the *Miranda* warnings:

> "DETECTIVE TARASZKIEWICZ: Before I talk to you, I gotta read you your rights, right? Okay, you ready?

DEFENDANT: Go for it, I guess.

DETECTIVE TARASZKIEWICZ: Okay. Before I ask you any questions, I have a duty to advise you of your rights. You understand that?

DEFENDANT: (nods)

DETECTIVE TARASZKIEWICZ: You have the right to remain silent. Do you understand that?

DEFENDANT: (nods)

DETECTIVE TARASZKIEWICZ: I need to hear it.

DETECTIVE MORALES: Do you understand?

DEFENDANT: (nods)

DETECTIVE TARASZKIEWICZ: I need to hear you say yes—

DEFENDANT: Yeah.

DETECTIVE TARASZKIEWICZ: —if you understand. Okay. Anything you say can and may be used against you in a court or other proceeding. Do you understand that?

DEFENDANT: Yeah, I know *Miranda* rights.

DETECTIVE TARASZKIEWICZ: Okay. Do you understand that you have a right to talk to a lawyer before we ask you any questions—

DEFENDANT: Yes, sir.

DETECTIVE TARASZKIEWICZ: And to have him with you during questioning. Do you understand that?

DEFENDANT: (nods)

DETECTIVE TARASZKIEWICZ: Do you?

DEFENDANT: Yes, sir.

DETECTIVE TARASZKIEWICZ: If you cannot afford or otherwise obtain a lawyer, and you want one, a lawyer will be appointed for you—

DEFENDANT: (unclear)

DETECTIVE TARASZKIEWICZ: And we will not ask any questions until he or she has been appointed. Do you understand that?

DEFENDANT: Yes, sir.

DETECTIVE TARASZKIEWICZ: If you decide to answer now, with or without a lawyer, you still have the right to stop questioning at any time—

DEFENDANT: Yes, sir.

DETECTIVE TARASZKIEWICZ: Or to stop questioning for the purpose of consulting a lawyer. Do you understand that?

DEFENDANT: (nods)."

During this exchange, defendant mostly stares ahead or down at the floor.

¶ 24    After the *Miranda* warnings, Detective Morales informs defendant that the victim has died and the police have the video of the assault defendant recorded on the cellphone. When Detective Taraszkiewicz tells defendant that their investigation is more important than defendant going to work on time, defendant says, "I answered your questions, I told you." Detective Taraszkiewicz tells defendant the detectives had not asked any questions. Defendant responds, nodding toward

Detective Morales, "Well, when he came in, he asked me questions, and I—I answered 'em for him." Detective Taraszkiewicz says, "Okay" and asks defendant what happened in the alley.

¶ 25    Defendant responds that he had been sleeping and "chilling" for the last four days, and may have smoked some marijuana. Defendant denies being present for the assault. The detectives tell him that Jones and Ayala, who already told the detectives what happened, placed defendant at the scene and the police have the video that clearly shows the offense. Defendant continues to deny that he was at the scene, asserts that no video will show him at the scene, and asks why the police are even asking if he was present if they have a video of the offense. Detective Morales leaves the room, and Detective Taraszkiewicz tells defendant they know he was at the scene so he should stop playing games and "man up." Detective Taraszkiewicz leaves the room and closes the door. Then defendant asks to talk to his father "to get my attorney" and says, "this good cop, bad cop sh*t don't work no more." Defendant sits quietly for a while and eventually turns to the camera and says, twice, "Burn in hell."

¶ 26    After filing the postconviction petition, defendant's attorney sought the appointment of different counsel, citing an "employment relationship" with defendant's trial attorneys. The court then appointed the public defender's office, who assigned three attorneys to defendant's case between 2016 and 2021. One of those attorneys filed a certificate pursuant to Rule 651(c).

¶ 27    The State filed a motion to dismiss, arguing that the postconviction statute's documentation requirement was not satisfied. The State also argued that defendant could not show that trial counsel performed deficiently because counsel used defendant's custodial statements strategically to support the defense theory that defendant did not participate in the charged offenses and that he

was merely present. The State asserted that the record rebutted defendant's claim that he was too intoxicated to knowingly waive his *Miranda* rights because the video showed that he was not incapacitated but rather was engaging with the detectives and arguing responsively with them. Further, defendant could not show prejudice because a hypothetical motion to suppress would not have been granted and all of defendant's statements in the video exhibit to his petition were exculpatory.

¶ 28    To address the State's claim of lack of documentation, postconviction counsel filed an affidavit by defendant, averring to the accuracy of the video. The State then withdrew that objection.

¶ 29    The circuit court dismissed the petition in a written order. It found defendant "waived" the ineffective counsel issue by not raising it on direct appeal. The court also found that trial counsel's strategy was to use defendant's ERI statements to show a lack of planning and, thus, a lack of accountability. In addition, the court found that defendant could not show prejudice because the video of the crime would likely have been sufficient to support a guilty verdict.

¶ 30    Defendant timely appealed.

¶ 31                                    II. ANALYSIS

¶ 32    This appeal is governed by the framework set forth in the Act. See 725 ILCS 5/122-1 *et seq*. (West 2020). The Act provides a mechanism pursuant to which criminal defendants who have suffered a substantial violation of their constitutional rights at trial may obtain relief. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001).

¶ 33    Postconviction proceedings are not a substitute for a direct appeal; rather, the Act simply "offers a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42. As such, all issues that were previously decided on direct appeal are *res judicata* and all issues that could have been raised on direct appeal are forfeited. *People v. Allen*, 2015 IL 113135, ¶ 20. To prevail on a claim for postconviction relief filed pursuant to the Act, "a defendant must show that he has suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged." *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006).

¶ 34    The Act provides for three distinct stages of review. *People v. Knapp*, 2020 IL 124992, ¶ 43. At the second stage, which is at issue in this appeal, counsel may be appointed to represent the defendant, and the State may respond to the filing with an answer or a motion to dismiss. 725 ILCS 5/122-2.1, 122-4, 122-5 (West 2020); *People v. Greer*, 212 Ill. 2d 192, 204 (2004). The defendant bears the heightened burden of making a substantial showing of a constitutional violation. *Allen*, 2015 IL 113135, ¶ 22. To ascertain whether the defendant has satisfied this burden, the trial court will examine the legal sufficiency of the petition and any accompanying documentation and ascertain "whether the allegations in the petition, liberally construed in favor of the defendant and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*, 2016 IL 118123, ¶ 31. Although the court does not engage in any fact-finding or make credibility determinations at this stage, the court need not accept as true facts that are "positively rebutted by the record." *People v. Johnson*, 2017 IL 120310, ¶ 14. Only if the defendant satisfies his burden of making a substantial showing of a constitutional violation will the petition be advanced to a

third-stage evidentiary hearing. *Allen*, 2015 IL 113135, ¶ 22. Absent such a showing, the petition will be dismissed. *People v. Bailey*, 2017 IL 121450, ¶ 18. The second-stage dismissal of a postconviction petition is subject to *de novo* review. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 35                                      A. Rule 651(c)

¶ 36     Defendant argues that he was denied the reasonable assistance of postconviction counsel guaranteed by Rule 651(c). Specifically, his petition, which was filed by appointed counsel, alleged only that trial counsel was ineffective for failing to move to suppress defendant's custodial statements due to his unknowing *Miranda* waiver based on his intoxication. Defendant claims, however, that the ERI video showed that the police used an improper question-first, warn-later technique in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004) (plurality opinion). Defendant argues that since this *Seibert* claim was related to the original unknowing *Miranda* waiver claim and required no additional record review, postconviction counsel was required to amend the petition to add the *Seibert* claim, and counsel's failure to do so violated Rule 651(c).

¶ 37     Under *Seibert*, officers cannot interrogate a person without *Miranda* warnings, then give the warnings, and then interrogate the person again. *Seibert*, 542 U.S. at 618-22 (Kennedy, J., concurring). This approach "effectively threatens to thwart *Miranda*'s purpose of reducing the risk that a coerced confession would be admitted." *Id*. at 617. Statements produced from this technique are inadmissible unless the police conduct was not deliberate or the officer took measures to cure the violation. *People v. Lopez*, 229 Ill. 2d 322, 361-62 (2008).

¶ 38     Defendant argues that the same video used to support his unknowing *Miranda* waiver claim revealed more viable grounds for a motion to suppress, specifically, that the police used an

unconstitutional question-first, warn-later technique. According to the video, when defendant is alone in the interrogation room and before he is read his *Miranda* warnings on camera, he says that he will sue for not hearing his *Miranda* rights, refers to the officers making statements to him about the offense, and repeats that he has answered their questions and does not know anything. After defendant was given *Miranda* warnings on camera, he tells Detective Taraszkiewicz, "I answered your questions, I told you." When Detective Taraszkiewicz denies questioning him, defendant responds, nodding his head toward Detective Morales, "Well, when he came in, he asked me questions, and I—I answered 'em for him." Neither detective disputes this. Detective Taraszkiewicz then says, "Okay," and continues with the questioning.

¶ 39    Defendant argues that postconviction counsel's duty under Rule 651(c) to make necessary amendments includes adding allegations of related claims supported by the same record. Defendant asserts that, because the improper question-first, warn-later technique allegations went to the substance of defendant's petition, it was unreasonable for postconviction counsel not to amend the petition to add the *Seibert* claim. Moreover, counsel did not need to comb through the entire record to discern this claim. Rather, counsel only needed to add allegations to support a claim that was apparent from the same evidence used to show the original, related claim. To support this argument, defendant cites *People v. Jones*, 2016 IL App (3d) 140094, ¶¶ 29-30 (finding Rule 651(c) violation based on postconviction counsel's failure to add claim of ineffective trial counsel for not introducing or making an offer of proof regarding the omitted portions of the redacted videotaped statements, which supported the "substance" of the *pro se* claim that the trial court erred by allowing the State to present the redacted videotape), and *People v. Jennings*, 345

Ill. App. 3d 265, 274-75 (2003) (finding Rule 651(c) violation where counsel, *inter alia*, failed to add allegations of disparate sentence, since the initially drafted petition "showed that defendant wanted to challenge his sentence"). Defendant argues that he has rebutted the presumption created by the Rule 651(c) certificate that postconviction counsel substantially complied with Rule 651(c) because counsel failed to make necessary amendments to defendant's petition. Accordingly, defendant asserts that this case should be remanded for new second-stage proceedings with the appointment of new postconviction counsel.

¶ 40    "[I]t is settled that there is no constitutional right to assistance of counsel during postconviction proceedings." *People v. Cotto*, 2016 IL 119006, ¶ 29. Rather, " '[t]he right to assistance of counsel in postconviction proceedings is a matter of legislative grace, and a defendant is guaranteed only the level of assistance provided by the [Act].' " *Id.* (quoting *People v. Hardin*, 217 Ill. 2d 289, 299 (2005)). The reasonable level of assistance guaranteed by the Act is "significantly lower" than the constitutionally mandated effective assistance at trial. *Pendleton*, 223 Ill. 2d at 472.

¶ 41    The purpose of appointing postconviction counsel at the second stage of proceedings under the Act is to review the *pro se* petition and "shape [petitioners'] complaints into the proper legal form and to present those complaints to the court." *People v. Addison*, 2023 IL 127119, ¶ 19. Towards this end, Rule 651(c) ensures that postconviction counsel provides the defendant with a reasonable level of assistance by imposing specific duties on counsel. *Id.* ¶ 20. Rule 651(c) requires counsel to certify that they have " 'consulted with the petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, *** examined

the record \*\*\*, and \*\*\* made any amendments *to the petitions filed pro se* that are necessary for an adequate presentation of petitioner's contentions.' " (Emphasis added.) *Id*. (quoting Ill. S. Ct. R. 651(c) (eff. July 1, 2017)).

> "Rule 651(c) only requires postconviction counsel to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' \*\*\* While postconviction counsel *may* conduct a broader examination of the record and may raise additional issues if he or she so chooses, there is no obligation to do so." (Emphasis in original.) *People v. Pendleton*, 223 Ill. 2d at 475 (quoting *People v. Davis*, 156 Ill. 2d 149, 164 (1993)).

¶ 42    Postconviction counsel's duty to shape and amend the *pro se* petition requires that counsel make routine amendments to the claims to prevent the postconviction court from dismissing the claims on procedural grounds, without reaching their merits. *Addison*, 2023 IL 127119, ¶ 39; *People v. Perkins*, 229 Ill. 2d 34, 44 (2008); *People v. Turner*, 187 Ill. 2d 406, 412-15 (1999). Specifically, when a defendant's petition alleges that his trial counsel was ineffective, postconviction counsel must amend the petition to allege ineffective assistance of appellate counsel, so that the petition's claim is not subject to procedural default because it could have been raised on direct appeal. *Perkins*, 229 Ill. 2d at 44. Rule 651(c) also requires that postconviction counsel attempt to obtain and submit affidavits from witnesses specifically identified in the *pro se* petition. *Id*.; *People v. Johnson*, 154 Ill. 2d 227, 246-47 (1993).

¶ 43    Defendant's claim that postconviction counsel violated Rule 651(c) by failing to amend defendant's counseled petition is not viable because Illinois courts have repeatedly recognized the

limitation that Rule 651(c) applies only where counsel is appointed after a defendant files a *pro se* petition. In *Cotto*, the court stated that, "Rule 651(c) applies only to a postconviction petition initially filed by a *pro se* defendant." 2016 IL 119006, ¶ 41. *Cotto* relied on *People v. Richmond*, 188 Ill. 2d 376, 381-83 (1999), which explained that Rule 651(c) applied when a defendant files a *pro se* petition, irrespective of whether he or she was later appointed counsel or retained private counsel. *Cotto*, 2016 IL 119006, ¶ 41; see *People v. Mitchell*, 189 Ill. 2d 312, 358 (2000) (counsel filed the initial postconviction petition and two amended petitions; the court addressed the applicability of Rule 651(c) and explained, "As defendant did not file a *pro se* petition, his attorney could not have violated that provision."); *People v. Anguiano*, 2013 IL App (1st) 113458, ¶¶ 11, 24 ("Rule 651(c) applies when a defendant proceeds *pro se* at the first stage and is represented by counsel at the second stage"); *People v. Bennett*, 394 Ill. App. 3d 350, 353 (2009) ("Rule 651(c) is inapplicable when the original petition was not filed *pro se*").

¶ 44   Based on the language of Rule 651(c) and rulings interpreting it, we reject defendant's allegation that his postconviction counsel did not comply with Rule 651(c) because defendant filed a counseled petition.

¶ 45                    B. Intoxication and *Miranda* Waiver Claim

¶ 46   Defendant argues that his petition made a substantial showing of ineffective assistance of trial counsel for not filing a motion to suppress defendant's custodial statements based on his alleged intoxication at the time of his *Miranda* waiver. Defendant states that the only evidence implicating him in the crime on a theory of accountability was his custodial statements to detectives, admitting that he was present at the scene and recorded the attack. No witness placed

defendant at the scene. He was not clearly visible on the recording, and no voice identification was made. Defendant argues that the ERI video of his time in detention preceding the *Miranda* waiver showed that he was visibly intoxicated, talking to himself and to the camera.

¶ 47    To advance to a third-stage evidentiary hearing on an ineffective assistance of counsel claim, a defendant's postconviction petition and supporting documentation must set forth a substantial showing that (1) counsel's representation was so professionally deficient that he or she did not function as the counsel guaranteed by the sixth amendment, and (2) counsel's deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *People v. Tate*, 2012 IL 112214, ¶ 19. *Strickland*'s criteria are conjunctive. "[A] defendant's failure to make the required showing of either deficient performance or sufficient prejudice will defeat a claim counsel was ineffective." *People v. Johnson*, 2021 IL 126291, ¶ 53.

¶ 48    *Strickland* directs courts to evaluate counsel's performance under an objective reasonableness criterion that recognizes the myriad "ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. "[A] reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007); *Strickland*, 466 U.S. at 689. Even when "counsel makes a mistake in trial strategy or tactics or an error in judgment, this will not render counsel's representation constitutionally defective." *Perry*, 224 Ill. 2d at 355-56. It is incumbent upon the defendant to overcome the strong presumption that the challenged action of counsel was the product of sound trial strategy and not the result of incompetence. *People v. Harris*, 129 Ill. 2d 123, 156 (1989). To overcome the strong

presumption that counsel's chosen strategy was sound, a defendant must show that counsel's decision was "so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 85. Decisions that involve matters of trial strategy will typically not support ineffective assistance of counsel claims, and courts traditionally consider counsel's decision to file a motion to suppress evidence to be a matter of trial strategy. *People v. Balark*, 2019 IL App (1st) 171626, ¶ 34.

¶ 49    *Strickland* also requires that the "defendant 'affirmatively prove' that prejudice resulted from counsel's errors." *Johnson*, 2021 IL 126291, ¶ 55 (quoting *Strickland*, 466 U.S. at 693). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. A defendant must show "actual prejudice," based on evidence and the record, rather than simply speculating that he suffered prejudice. *Johnson*, 2021 IL 126291, ¶ 55; *People v. Bew*, 228 Ill. 2d 122, 135-36 (2008). A defendant who contends that counsel was ineffective for failing to bring a motion to suppress must show both a reasonable probability that the motion would have been granted and that the suppression of the evidence would have changed the outcome of the trial. *Bew*, 228 Ill. 2d at 128-29.

¶ 50    Furthermore, to prevail on a motion to suppress based on intoxication, a defendant must show not only that he was intoxicated but that he was so "grossly intoxicated" that he lacked the capacity to waive his rights under *Miranda*. *People v. Garcia*, 165 Ill. 2d 409, 421-22 (1995). "The fact that a defendant is under the influence of alcohol or drugs at the time of the confession does not automatically render his statements inadmissible." *People v. Foster*, 168 Ill. 2d 465, 476 (1995). The evidence must clearly establish that the defendant lacked the capacity to waive his

rights due to his condition. *People v. Johnson*, 285 Ill. App 3d 802, 812 (1996). When the proof of intoxication and lack of capacity is less clear, evidence of a defendant's drugged or intoxicated condition goes only to the weight to be given to his statement and does not bar its admission. See *People v. Kincaid*, 87 Ill. 2d 107, 119 (1981); *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 15; *People v. Andersen*, 134 Ill. App. 3d 80, 95 (1985).

¶ 51    Defendant's petition failed to make a substantial showing under the first prong of *Strickland*. The record clearly establishes that a motion to suppress would have been inconsistent with the trial counsel's reasonable trial strategy, so that defendant could not make a substantial showing that counsel performed deficiently. Defendant's trial counsel used defendant's recorded statements strategically, to show that defendant was not legally accountable for his codefendants' actions. During his opening statement and closing argument, defendant's trial counsel argued that defendant's statements showed that he was merely present when the crimes took place and did not participate in the attack; he only recorded it on codefendant Jones's cellphone.

¶ 52    As this court pointed out when it affirmed defendant's convictions based on his accountability, the case was one of "first impression, which involves the recording of a crime and the accountability of the person doing the recording." *Malcolm*, 2015 IL App (1st) 133406, ¶ 53. This supports the reasonableness of trial counsel's strategic decision to rely on defendant's recorded statements to the detectives to support his contention that defendant merely took the video, and that this was insufficient to render him accountable because he told the detectives that he did not know that his codefendants were going to beat and rob the victim and that he was merely an idle observer who had recorded the incident. Before this case of "first impression," no Illinois

court had found a defendant accountable for recording crimes in this manner, and it was not unreasonable for counsel to have argued that such a defendant was not accountable. Trial counsel's performance must be evaluated from "his perspective at the time, rather than through the lens of hindsight." *Perry*, 224 Ill. 2d at 344; *Strickland*, 466 U.S. at 689; see *People v. Peel*, 2018 IL App (4th) 160100, ¶ 46 ("We expect trial counsel to be effective and the trial court knowledgeable of the law. In this case, they were. Neither are expected or required to be clairvoyant."). Here, defendant's petition and supporting documentation did not make a substantial showing that counsel's strategy "appear[ed] so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *Lewis*, 2015 IL App (1st) 122411, ¶ 85.

¶ 53    Thus, defendant did not make a substantial showing of deficient performance under *Strickland*, and this court affirms the ruling granting the State's motion to dismiss his ineffective assistance claim. See *People v. Albanese*, 104 Ill. 2d 504, 527 (1984) (a defendant's failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel).

¶ 54                                    III. CONCLUSION

¶ 55    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 56    Affirmed.